## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

CHRISTOPHER LEE PRICE,        )
                             )
    Plaintiff,              )
                             )
v.                            )          No. 1:19-cv-00057-KD-MU
JEFFERSON S. DUNN, Commissioner,  )
Alabama Department of Corrections,  )
in his official capacity,       )
                             )
CYNTHIA STEWART, Warden, Holman  )
Correctional Facility, in her official  )
capacity, and                 )
                             )
OTHER UNKNOWN EMPLOYEES  )
AND AGENTS,                  )
Alabama Department of Corrections,  )
in their official capacities,    )
                             )
    Defendants.             )

## ANSWER TO PRICE'S COMPLAINT

Defendants Jefferson S. Dunn, in his official capacity as Commissioner of

the Alabama Department of Corrections, and Cynthia Stewart, in her official

capacity as Warden of Holman Correctional Facility, for their answer to Plaintiff

Christopher Lee Price's complaint,[1] state as follows:

---

1. Doc. 1.

## RESPONSE TO NATURE OF THE ACTION

1.      Defendants admit that Price is a death-row inmate in the custody of the Alabama Department of Corrections.

2.      Defendants admit that they asked the Alabama Supreme Court to set Price's execution date on January 11, 2019.

3.      Defendants admit that they intend to carry out the lawful sentence of death imposed on Price pursuant to his conviction for capital murder. Defendants further admit that the ADOC protocol calls for the sequential administration of midazolam hydrochloride, rocuronium bromide, and potassium chloride. Defendants deny that such a protocol has been involved in what Price terms "botched" executions.

4.      Defendants admit that they intend to execute Price using the three-drug protocol because nitrogen hypoxia is neither readily implemented nor available to Price.

5.      Admitted.

6.      Defendants admit that all inmates sentenced to death prior to the adoption of nitrogen hypoxia as a method of execution were given a one-time thirty-day period in which to elect this method of execution immediately following the enactment of Alabama Act 2018-353. As the act was enacted on June 1, 2018,

inmates had until June 30, 2018, to make this election.[2] Every death-row inmate at

Holman Correctional Facility, including Price, was given an election form on the

order of Warden Stewart.[3] A copy of this form is attached as Exhibit A. Defendants

deny that they made any attempt to keep these election forms secret or that they

entered into secret agreements.

7.     Again, Defendants deny that they made any attempt to keep the

election forms secret or that they entered into secret agreements. Defendants admit

that they denied Price's untimely request to elect nitrogen hypoxia in February

2019.

8.     Denied.

9.     Defendants admit that Price initiated § 1983 litigation regarding the

midazolam protocol in 2014,[4] that this Court dismissed the complaint in 2017 due

to Price's failure to identify an alternative protocol that was readily available,

---

2. ALA. CODE § 15-18-82.1(b)(2) (1975)
3. On information and belief, these forms were made by an employee of the
   Federal Defenders for the Middle District of Alabama. At the time that nitrogen
   hypoxia was adopted, the Federal Defenders were involved in prolonged multi-
   plaintiff § 1983 litigation concerning the execution protocol, ultimately
   captioned "In re: Alabama Lethal Injection Protocol Litigation," 2:12-cv-
   000316-WKW-CSC (M.D. Ala.). In their final amended complaint, the plaintiffs
   alleged nitrogen asphyxiation as an alternative to the midazolam protocol. (See
   Doc. 348 at 32–33.) After the enactment of Alabama Act 2018-353, all of the
   plaintiffs elected nitrogen hypoxia, and so the parties agreed that the § 1983
   litigation was due to be dismissed as moot. (See Docs. 427, 430.)
4. Complaint, Price v. Dunn, 1:14-cv-00472-KD-C (S.D. Ala. Oct. 8, 2014),
   Doc. 1.

feasible, and substantially safer than the current protocol,[5] that the Eleventh Circuit affirmed the judgment of the circuit court,[6] that rehearing was denied in December 2018, and that Price has yet to seek certiorari review.

10.     Defendants deny that the midazolam protocol will cause Price unconstitutional pain. Defendants further deny that nitrogen hypoxia is readily available, feasible, and significantly safer than the midazolam protocol. The ADOC has yet to finalize a nitrogen hypoxia protocol, and so it is not currently available to any inmate. Unlike his fellow inmates who elected nitrogen hypoxia during the statutorily authorized period—and, thus, who will not be executed until such time as a protocol is finalized—Price failed to elect.

11.     Denied.

12.     Denied.

13.     Denied. Price has not stated grounds upon which relief can be granted, and there is no Eighth Amendment or Fourteenth Amendment violation.

---

5. Order, Price v. Dunn, 1:14-cv-00472-KD-C (S.D. Ala. Mar. 15, 2017), Doc. 107.
6. *Price v. Comm'r, Ala. Dep't of Corrs.*, No. 17-11396, 2018 WL 4502035 (11th Cir. Sept. 19, 2018).

## RESPONSE TO JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

15. Admitted.

## RESPONSE TO PARTIES

16. Admitted.

17. Admitted.

18. Admitted.

19. Defendants admit that employees of the Alabama Department of Corrections are assigned duties requiring their participation in the execution of a lawful death sentence imposed by an Alabama court and as ordered by the Alabama Supreme Court. Defendants further admit that the identity of these individuals is privileged and remains confidential because of the nature of their duties in this regard.

20. Admitted.

## RESPONSE TO JUSTICIABLE CASE OR CONTROVERSY

21. Defendants admit that they adopted a three-drug lethal injection protocol on September 10, 2014, and will use that protocol to execute Price. Defendants deny that the protocol is unconstitutional. Defendants further deny that

Price has any right to an extended nitrogen election period or that he has been treated any differently from any other death-row inmate.

22.    Admitted.

### RESPONSE TO PROCEDURAL BACKGROUND

23.    Defendants admit that Price was convicted of capital murder during the course of a robbery and sentenced to death for the killing of William "Bill" Lynn after Price stabbed Mr. Lynn to death with a sword and a dagger.[7]

24.    Admitted.

25.    Admitted.

26.    Admitted.

27.    Admitted.

28.    Admitted.

29.    Admitted.

30.    Admitted.

31.    Defendants admit that pursuant to Alabama Act 2018-353 and section 15-18-82.1(b)(2) of the Code of Alabama, inmates sentenced prior to the enactment of Alabama Act 2018-353 had a thirty-day period from the enactment in which to elect nitrogen hypoxia. This period lasted from June 1–30, 2018. Defendants deny that this is a "completely arbitrary" restriction and would direct

---

7. *Price v. State*, 725 So. 2d 1003, 1062 (Ala. Crim. App. 2007).

this Court to section 15-18-82.1(b)(1), which made a similar thirty-day provision

for the election of electrocution after Alabama made lethal injection its primary

method of execution. Moreover, Price misquotes the law, which reads:

> If electrocution, nitrogen hypoxia, and lethal injection are all held to
> be unconstitutional by the Alabama Supreme Court under the
> Constitution of Alabama of 1901, or held to be unconstitutional by the
> United States Supreme Court under the United States Constitution, or
> if the United States Supreme Court declines to review any judgment
> holding a method of execution to be unconstitutional under the United
> States Constitution made by the Alabama Supreme Court or the
> United States Court of Appeals that has jurisdiction over Alabama,
> then all persons sentenced to death shall be executed by any
> constitutional method of execution based on the sole discretion of the
> Commissioner of the Department of Corrections.[8]

32.     Again, Defendants deny that they entered into secret agreements with

death-row inmates. All such inmates, including Price, were given the same thirty-

day election period and an election form.

33.     Defendants admit that they denied Price's untimely election requests.

34.     Defendants admit that they asked the Alabama Supreme Court to set

Price's execution date on January 11, 2019.

---

8. ALA. CODE § 15-18-82.1(c) (1975).

## RESPONSE TO FACTUAL ALLEGATIONS

### A.   Allegations Concerning Execution by Lethal Injection

35.   Admitted to the extent that Alabama's default method of execution is by lethal injection unless an inmate affirmatively elects to be executed by electrocution or nitrogen hypoxia.[9]

36.   Defendants admit the first sentence of paragraph 36. The second sentence of paragraph 36 is denied. Defendants are without sufficient information to admit or deny the third sentence of paragraph 36.

37.   Defendants admit the first two sentences of paragraph 37. Defendants are without sufficient information to admit or deny the remaining sentences in the paragraph.

38.   Defendants admit that other states utilize a three-drug protocol virtually identical to Alabama's protocol.

### B.   Allegations Concerning the ADOC's Decision to Use Midazolam

39.   Defendants admit that midazolam serves as an anesthetic to render an inmate unconscious as the first drug in Alabama's lethal injection protocol. Defendants further admit that this protocol does not constitute cruel and unusual punishment. Defendants deny any remaining allegations.

---

9. *Id.* § 15-18-82.1(a).

40.     Defendants admit that sodium thiopental and pentobarbital were previously used as the first drugs in Alabama's three-drug lethal injection protocol, but that those drugs are no longer available to Defendants.

41.     Defendants admit that on September 10, 2014, the ADOC amended its protocol, which now directs that a 500-milligram bolus of midazolam be administered as the first drug in its lethal injection protocol. Defendants deny any remaining allegations.

42.     Denied.

43.     Defendants admit only to the extent that sodium thiopental and pentobarbital are unavailable to the ADOC. Defendants deny all remaining allegations.

44.     Denied.

45.     Denied.

46.     Defendants admit only that Ronald Bert Smith, executed on December 8, 2016, was a longtime smoker with a history of asthma who was diagnosed with COPD and coughed once he was unconscious, and that Torrey McNabb, executed on October 19, 2017, exhibited involuntary movement and was given a second 500-milligram bolus dose of midazolam prior to the administration of the second and third drugs. Defendants deny all remaining allegations.

47.     Defendants admit only that four inmates were successfully executed in Arkansas in April 2017; that on July 23, 2014, the State of Arizona executed Joseph Wood with a two-drug protocol using midazolam and hydromorphone, a protocol not at issue in the present litigation; that on January 16, 2014, the State of Ohio executed Dennis McGuire with a two-drug protocol using midazolam and hydromorphone, a protocol not as issue in the present litigation; and that on April 29, 2014, the State of Oklahoma executed Clayton Lockett with a three-drug protocol using midazolam, but due to unnoticed IV infiltration, the execution drugs were not properly administered.[10] Defendants deny all remaining allegations.

48.     Denied.

49.     Denied.

**C.     Allegations Concerning Alabama's Adoption of Nitrogen Hypoxia**

50.     Admitted.

51.     Admitted.

52.     Defendants admit that the inhalation of pure nitrogen will lead to death.

53.     Admitted.

54.     Admitted.

---

10. The Oklahoma Department of Public Safety released its findings on the Lockett execution. A copy can be found at https://bit.ly/2WWXOMq (last visited Feb. 13, 2019).

55.     Defendants are without sufficient information to admit or deny.

56.     Defendants admit that pursuant to Alabama Act 2018-353 and section 15-18-82.1(b)(2) of the Code of Alabama, inmates sentenced prior to the enactment of Alabama Act 2018-353 had a thirty-day period from the enactment in which to elect nitrogen hypoxia. This period lasted from June 1–30, 2018. Defendants deny that this is a "completely arbitrary" restriction and would direct this Court to section 15-18-82.1(b)(1), which made a similar thirty-day provision for the election of electrocution after Alabama made lethal injection its primary method of execution. Moreover, Price misquotes the law, which reads:

> If electrocution, nitrogen hypoxia, and lethal injection are all held to be unconstitutional by the Alabama Supreme Court under the Constitution of Alabama of 1901, or held to be unconstitutional by the United States Supreme Court under the United States Constitution, or if the United States Supreme Court declines to review any judgment holding a method of execution to be unconstitutional under the United States Constitution made by the Alabama Supreme Court or the United States Court of Appeals that has jurisdiction over Alabama, then all persons sentenced to death shall be executed by any constitutional method of execution based on the sole discretion of the Commissioner of the Department of Corrections.[11]

57.     Defendants deny that they entered into secret agreements with death-row inmates. All such inmates, including Price, were given the same thirty-day election period and an election form. Defendants admit that Price will be executed by lethal injection. Defendants deny all remaining allegations.

---

11. ALA. CODE § 15-18-82.1(c) (1975).

**D.      Allegations Concerning Midazolam**

58.      Defendants admit the first sentence. Defendants are without sufficient

information to admit or deny the remaining allegations in the paragraph.

59.      Denied.

60.      Denied.

61.      Denied.

62.      Denied.

**E.      Allegations Concerning the ADOC's Adoption and Implementation of
Execution Protocols**

63.      Defendants admit the first sentence of this paragraph. Defendants

deny any remaining allegations.

64.      Defendants admit that the ADOC will use FDA-approved drugs to

execute Price.

65.      Defendants are without sufficient information to admit or deny the

first two sentences. Defendants deny any remaining allegations.

**F.      Allegations Concerning the Consciousness Assessment**

66.      Denied.

67.      Denied.

68.      Denied.

69.      Denied.

70.     Denied.

## RESPONSE TO FIRST CAUSE OF ACTION

71.     Denied

72.     Defendants intend to execute Price using a constitutional and effective execution protocol calling for the sequential administration of midazolam hydrochloride, rocuronium bromide, and potassium chloride.

73.     Defendants will execute Price pursuant to a lawful, judicially imposed sentence under Alabama law.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Defendants deny that the State of Alabama's lethal injection protocol violates the Eighth Amendment.

## RESPONSE TO SECOND CAUSE OF ACTION

78.     Denied.

79.     Admitted.

80.     Defendants admit that the ADOC personnel who will execute Price will abide by the ADOC protocol and its safeguards.

81.     Denied.

13

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Defendants deny that the State of Alabama's lethal injection protocol violates the Fourteenth Amendment.

## RESPONSE TO THIRD CAUSE OF ACTION

87.     Denied.

88.     Admitted.

89.     Denied. The State of Alabama's lethal injection protocol is constitutional, and nitrogen hypoxia is not a feasible, readily available, and substantially safer alternative for Price because he neglected to elect nitrogen during the thirty-day period set out by statute.

90.     Defendants admit that some death-row inmates elected nitrogen hypoxia during the thirty-day period and will be executed using that method once a protocol is finalized. Defendants deny that they are similarly situated to Price because they made the election, whereas he failed to do so.

91.     Defendants deny that nitrogen hypoxia is significantly safer than lethal injection. Otherwise, this paragraph is admitted.

92.     Denied.

93.     Denied.

## RESPONSE TO PRAYER FOR RELIEF

94.     Denied.

## DEFENSES

A.     This action fails to state a claim for relief as a matter of law.

B.     Price has unclean hands.

C.     Price is not entitled to the relief he seeks.

D.     Alabama's lethal injection protocol does not violate basic principles of human dignity or contemporary standards of decency.

E.     Alabama's lethal injection protocol does not amount to intentional, reckless indifference to acts violating any party's constitutional rights.

F.     Any interest Price has in pursuing his claim is outweighed by the State's interest in the finality of duly adjudicated criminal judgments, the timely administration of death sentences, guarding against a flood of similar claims, and ensuring closure for victims, their families, and the public.

G.     Alabama's method of carrying out a sentence of death by lethal injection does not cause or expose a condemned person to an unnecessary or substantial risk of serious harm, and Defendants deny that lethal injection as administered in Alabama violates any party's constitutional rights.

H.      A lethal injection is not a medical procedure requiring the same safeguards and oversight as such procedures, and an execution by lethal injection is not governed by the rules and regulations applying to medical procedures.

I.      Price's Eighth Amendment rights have not been, and will not be, violated.

J.      Defendants deny any claim or allegation of Price's complaint that is not expressly admitted above.


       Respectfully submitted on this the 26th day of February 2019.


STEVE MARSHALL
ATTORNEY GENERAL OF ALABAMA
BY—


*/s/ Lauren A. Simpson*
Lauren A. Simpson
Beth J. Hughes
Henry M. Johnson
*Alabama Assistant Attorneys General*
Counsel for Defendants

## CERTIFICATE OF SERVICE

I certify that on February 26, 2019, I served a copy of the foregoing upon counsel for the Plaintiff by filing the same via the Court's CM/ECF system, which shall cause the same to be electronically transmitted to: **Aaron M. Katz** and **David M. Coriell**.

/s/ *Lauren A. Simpson*

Lauren A. Simpson
*Alabama Assistant Attorney General*
State of Alabama

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152
Tel: (334) 242-7300
Fax: (334) 353-3637
E-mail: lsimpson@ago.state.al.us