# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| CHRISTOPHER LEE PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-00057-KD-MU |
| | ) | |
| JEFFERSON S. DUNN, Commissioner, | ) | |
| Alabama Department of Corrections, | ) | |
| in his official capacity, | ) | |
| | ) | |
| CYNTHIA STEWART, Warden, Holman | ) | |
| Correctional Facility, in her official | ) | |
| capacity, and | ) | |
| | ) | |
| OTHER UNKNOWN EMPLOYEES | ) | |
| AND AGENTS, | ) | |
| Alabama Department of Corrections, | ) | |
| in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY TO PRICE'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT,
OPPOSITION TO PRICE'S CROSS-MOTION FOR SUMMARY
JUDGMENT,
<u>AND OPPOSITION TO PRICE'S MOTION FOR STAY OF EXECUTION</u>**

In accordance with this Court's scheduling order,[1] Defendants offer a brief reply addressing Price's opposition to Defendants' motion for summary judgment,[2]

---

1. Doc. 18.
2. Doc. 29-1.

his cross-motion for summary judgment,[3] and his emergency motion for a preliminary injunction staying his execution.[4] For the reasons that follow, Price's cross-motion and motion for stay of execution are due to be denied, and Defendants are entitled to summary judgment in this matter.

I. **Price has not shown a genuine issue as to any material fact regarding his equal protection claim.**

To prevail on an equal protection claim, Price must show (1) that Defendants will treat him disparately from other similarly situated persons, and (2) that the disparate treatment burdens a fundamental right, targets a suspect class, or is not rationally related to a legitimate government interest.[5] He cannot make this showing, and nothing in his pleadings provides evidence to support his case.[6]

By Price's admission, the State treated Price exactly like it treated every other death-row inmate at Holman Correctional Facility.[7] At Warden Stewart's direction, each inmate in Price's class received a form discussing nitrogen election and was told to sign and return it to the warden if he wished to make the election.[8] The form identified Act 2018-353, stated that the inmate was making an election, and offered

---

3. Docs. 29, 29-1.
4. Doc. 28.
5. *DeYoung v. Owens*, 646 F.3d 1319, 1327–28 (11th Cir. 2011).
6. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–16 (11th Cir. 1993).
7. Doc. 29-1 at 7.
8. Doc. 19-1 at 2.

a date blank reading, "___ day of June, 2018."⁹ Whether the person who drafted the form intended that it be distributed to every death-row inmate¹⁰ is irrelevant to the question of whether the State treated Price the same way it treated similarly situated inmates.

Moreover, Price was represented by counsel during the election period. Indeed, in June 2018, Price's counsel was awaiting a decision from the Eleventh Circuit in Price's first 42 U.S.C. § 1983 action, having argued the case in February.¹¹ If Price had a question about Act 2018-353 or what the nitrogen election meant to him, then he had the same opportunity as any other inmate to contact his counsel. That counsel failed to keep abreast of relevant developments in a state in which he was actively engaged in litigation concerning a death-sentenced inmate¹² has no bearing on the question of whether the State treated Price differently from other inmates. *Price* had timely notice, *Price* could have asked counsel if he wanted a legal consultation, and yet *Price* sat on his hands for seven months until the State moved

---

9. *Id.*; *see* Doc. 29-3 at 2 (reproduced).
10. *See* Doc. 29-3 at 3.
11. That opinion affirming this Court issued in September 2018. *Price v. Comm'r, Ala. Dep't of Corrs.*, No. 17-11396 (11th Cir. Sept. 19, 2018); *reh'g denied*, No. 17-11396-P (Dec. 26, 2018). Price's six-page petition for writ of certiorari was filed on March 26, 2019, eighty-two days after the Eleventh Circuit mandate issued. *See* Price v. Dunn, 18-1249 (2019).
12. Doc. 29-1 at 5.

to set his execution date.[13] As noted in Defendants' motion for summary judgment, inmates like Price who were not represented by the Federal Defenders still managed to make a timely election.[14]

Price asserts that the State has no rational basis for classifying inmates based on whether they provided timely notice of election of nitrogen hypoxia.[15] But the thirty-day window for election provided in section 15-18-82.1(b)(2) of the Code of Alabama (1975) has an obvious rational basis: the efficient use of State resources in planning and preparing for executions, which is hardly a "non sequitur."[16] The State of Alabama has a constitutional method of execution—lethal injection. It is under no obligation to offer inmates a menu of alternative means of execution from which they may select at any time.[17] Because the State does currently offer two alternatives, however, all inmates are given a thirty-day window from the time the Alabama Supreme Court issues a certificate of judgment in which to elect electrocution or

---

13. This case is distinguishable from that of Corey Maples and the so-called "mailroom of death," in which the Supreme Court granted relief because Maples's pro bono counsel abandoned him and Maples thereby missed a filing deadline. *Maples v. Thomas*, 565 U.S. 266 (2012). Unlike Maples, Price had notice of the election opportunity and had access to counsel.
14. *See* Doc. 19 at 14–15.
15. Doc. 29-1 at 14.
16. *See id.* at 16.
17. Indeed, it bears repeating that the innocent man Price murdered had thirty-eight cuts, lacerations, and stab wounds, and one of his arms was almost severed. C. 215 (sentencing order).

nitrogen hypoxia if they so desire.[18] To give inmates whose direct appeal concluded prior to the introduction of the alternatives the same opportunity as newly sentenced inmates, a thirty-day election period was included by statute after the introduction of lethal injection (if the inmate wanted electrocution) and nitrogen hypoxia (if the inmate wanted nitrogen hypoxia).[19] There is nothing irrational about the State setting a time limit for an inmate to choose how he would prefer to be executed. Requesting an execution date is not a matter the State takes lightly, and the Alabama Department of Corrections must ensure that its equipment and training are up to standard before an execution is carried out. Price offers *no* time limit in his pleading,[20] and taking his view to the logical end, an inmate could change his mind as to his method of execution up until the moment he entered the death chamber. In other words, conceivably, the ADOC could prepare for a lethal injection but be blindsided by an eleventh-hour nitrogen election.

Price has no right to demand that he be treated better than other death-row inmates. The election provision did not vest in him or any other inmate a right to receive special notice of the law. Even so, the State gave Price the same notice and opportunity to elect that it gave every other death-row inmate, and Price had the same opportunity as any other inmate to confer with his counsel if he had questions.

---

18. ALA. CODE § 15-18-82.1(b) (1975).
19. *Id.*
20. *See* Doc. 29-1 at 14–19.

To allow Price to make an untimely election would be giving him preferential treatment denied to other inmates, such as Domineque Ray, who was constitutionally executed by lethal injection without incident on February 7, 2019.[21] As nothing in Price's pleadings provides evidence to support his equal protection claim, Defendants are entitled to summary judgment.

II.   **Price has not met his *Glossip*/*Baze* burden of naming an available alternative method of execution.**

Price's Eighth Amendment claim[22] raises the same allegations concerning lethal injection that he raised before this Court in his previous § 1983 litigation. Indeed, he offers this Court the same expert declaration from Dr. David Lubarsky that he provided to Defendants in April 2016.[23] As before, under *Baze v. Rees*[24] and *Glossip v. Gross*,[25] Price bears the burden of naming a "known and available alternative method of execution that would entail a significantly less severe risk" than the ADOC's lethal injection protocol—an alternative that is "feasible, readily

---

21. *See Ray v. Dunn*, No. 2:19-cv-00088-WKW, 2019 WL 418105, at *2 (M.D. Ala. Feb. 1, 2019) ("[T]o be executed by nitrogen hypoxia, Ray had to request it in writing by July 1, 2018. *See id.* § 15-18-82.1(b)(2). He did not elect nitrogen hypoxia until January 29, 2019. Because Ray made his election several months too late, the State denied his request." (citation omitted)).
22. *See* Doc. 29-1 at 7–13.
23. Doc. 28-1; *see* Plaintiff's Memorandum in Opposition to Defendants' motion for Summary Judgment of Price's Eighth Amendment Claim, Exhibit A, Price v. Thomas, 1:14-cv-00472-KD-C (S.D. Ala. Aug. 19, 2016), Doc. 78-1.
24. 553 U.S. 35 (2008).
25. 135 S. Ct. 2726 (2015).

6

implemented, and in fact significantly reduce[s] a substantial risk of severe pain."[26] This time, the question of whether he has done so hinges in part[27] on the availability of nitrogen hypoxia.

Defendants do not contend that nitrogen gas is not commercially available. The problem for Price is that nitrogen hypoxia is not *legally* available to him because of his failure to make a timely election, just as electrocution would not be legally available to him if he were to attempt to elect it now.[28] That a thing exists in the world does not make it an available method of execution. That Price's counsel could send an associate to buy a tank of nitrogen[29] does not make nitrogen hypoxia a legally available method of execution for Price, just as it would make no difference

---

26. *Id.* at 2737 (cleaned up).
27. The ADOC does not concede that lethal injection is unsafe, nor that nitrogen hypoxia is substantially safer. Indeed, as the Supreme Court noted on April 1, "This Court has yet to hold that a State's method of execution qualifies as cruel and unusual, and perhaps understandably so." *Bucklew v. Precythe*, No. 17-815, 2019 WL 1428884, at *7 (Apr. 1, 2019).
28. In *Bucklew*, the Supreme Court wrote, "An inmate seeking to identify an alternative method of execution is not limited to choosing among those presently authorized by a particular State's law." *Id.* at *10. However, the Court also noted that in that case, Missouri had a "legitimate" reason to decline using nitrogen hypoxia, the inmate's alternative method, because no other state had yet carried out an execution by hypoxia. *Id.* at *11. Here, the State of Alabama has a legitimate reason not to use nitrogen hypoxia in Price's case: Alabama does not yet have a hypoxia protocol or the necessary equipment to carry out a constitutional execution by hypoxia, and Price did not even attempt to elect nitrogen hypoxia until January 27, 2019, more than two weeks after the State moved for his election date to be set.
29. *See* Doc. 29-4.

7

if counsel asked his associates to build an electric chair or buy rope or bullets.[30] Under Alabama law, Price will not be executed by nitrogen hypoxia unless lethal injection is held to be unconstitutional or the ADOC determines that it is unavailable.[31] Price had a chance to elect nitrogen hypoxia—indeed, he was challenging lethal injection at the time of the election period. That he failed to do so is no one's fault but his own.

Moreover, Price has not met his "burden . . . to plead and prove . . . a known and available alternative method of execution. . . ."[32] Price's complaint refers generally to "nitrogen hypoxia," which "can be induced when an individual inhales an asphyxiant gas" until that "gas displaces the normal levels of oxygen found in the air, thus depriving a person of the necessary levels of oxygen."[33] But Price has not pleaded in any detail how the State could induce nitrogen hypoxia or provided the slightest indication of how the method would take shape.[34] Neither Alabama nor any

---

30. Moreover, even if Defendants were to purchase a tank of nitrogen in this fashion, Price has not purchased the other equipment necessary to carry out a safe execution by hypoxia, nor has he explained in his pleadings how a single tank, without more, is sufficient to carry out an execution that would satisfy him. Indeed, Defendants assume that if they were to agree to execute Price by nitrogen hypoxia on April 11, Price would then immediately initiate another § 1983 action challenging the constitutionality of the hypoxia protocol.
31. ALA. CODE § 15-18-82(a) (1975).
32. *Arthur v. Commr, Ala. Dep't of Corrs.*, 840 F.3d 1268, 1303 (11th Cir. 2016).
33. Doc. 1 ¶¶ 50–51.
34. While counsel for Price proffers a preliminary draft of a document entitled "Nitrogen Induced Hypoxia as a Form of Capital Punishment," which was produced for an Oklahoma state representative, *see* Doc. 29-2, Ex. A, the

other state has ever carried out an execution "by" nitrogen hypoxia.[35] And Price "does not say," much less prove, "that any ADOC employee would have the first idea about how to carry out an execution by this method, and, undeniably, doing so would require a lot more than merely buying some new supplies for the ADOC to begin carrying out executions by this new method."[36] As the Supreme Court noted only yesterday, *Baze* and *Glossip*'s mandate "means the inmate's proposal must be sufficiently detailed to permit a finding that the State could carry it out '"relatively easily and reasonably quickly."'"[37]

Accordingly, the fact that Price's attorney could buy a canister of nitrogen does not prove that nitrogen hypoxia is a known and available alternative method of execution. Nitrogen, by itself, is not a "method."[38] No state has yet executed an inmate with nitrogen, and those states that have included a provision for nitrogen hypoxia in their capital statutes have not yet produced fully realized execution protocols or found the necessary equipment and supplies—indeed, one state has

---

    document offers only vague suggestions as to how an execution by hypoxia can or should be carried out. Price's assertion in yesterday's notice of supplemental authority that this document distinguishes this matter from *Bucklew*, Doc. 30 at 2, is simply wrong.

35. *Arthur*, 840 F.3d at 1318.
36. *Id.*
37. *Bucklew*, 2019 WL 1428884, at *11.
38. On a similar note, most lawyers can presumably purchase bullets, yet the Eleventh Circuit has held that "the firing squad is not an alternative method of execution that is available, feasible, or readily implemented by the ADOC." *Arthur*, 840 F.3d at 1320.

9

already found that suppliers refuse to sell products for use in execution.[39] Simply proving the unquestioned fact that nitrogen gas is commercially available does not mean that Price has met his burden of showing how nitrogen hypoxia is available, much less that it is safer than lethal injection. As the Supreme Court explained yesterday in finding that another inmate failed to meet his *Baze/Glossip* burden:

> Mr. Bucklew's bare-bones proposal falls well short of that standard. He has presented no evidence on essential questions like how nitrogen gas should be administered (using a gas chamber, a tent, a hood, a mask, or some other delivery device); in what concentration (pure nitrogen or some mixture of gases); how quickly and for how long it should be introduced; or how the State might ensure the safety of the execution team, including protecting them against the risk of gas leaks. Instead of presenting the State with a readily implemented alternative method, Mr. Bucklew (and the principal dissent) point to reports from correctional authorities in other States indicating that additional study is needed to develop a protocol for execution by nitrogen hypoxia. *See* App. 697 (Oklahoma grand jury report recommending that the State "retain experts" and conduct "further research" to "determine how to carry out the sentence of death by this method"); *id.*, at 736 (report of Louisiana Dept. of Public Safety & Corrections stating that "[r]esearch . . . is ongoing" to develop a nitrogen hypoxia protocol).

---

39. As of January 2019, Oklahoma could not find a manufacturer of a gas delivery system willing to sell it to the Department of Corrections. According to the department director, "[The manufacturers are] all concerned and afraid of the same thing—every one of them—retribution, losing their business, protests. . . . They're concerned for their employees, the threats that come." Nolan Clay, *Executions by Gas Stalled Indefinitely While State Seeks Willing Seller of Device*, THE OKLAHOMAN (Jan. 27, 2019), https://bit.ly/2KaFz3Z. Again, the fact that an attorney could purchase a tank of nitrogen does not make nitrogen hypoxia an available method of execution, nor is a tank of nitrogen all that is required to perform a constitutional execution. *See Bucklew*, 2019 WL 1428884, at *11 n.1 (citing Clay, *supra*).

That is a proposal for more research, not the readily implemented alternative that *Baze* and *Glossip* require.⁴⁰

As Price has failed once again to meet his burden under *Glossip*, *Arthur*, and now *Bucklew* as well, Defendants are entitled to summary judgment.

**III. Price is not entitled to a stay of execution.**

"[A] court may grant a stay of execution *only* if the moving party establishes that: '(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; *and* (4) if issued, the injunction would not be adverse to the public interest.'"⁴¹ Price's stay request should be denied because it does not meet the requirements for a stay to issue.

First, Price cannot demonstrate a substantial likelihood of success on the merits. His equal protection claim is meritless, he has failed to meet his burden of naming a known and available alternative method of execution, and as for the other prong of his Eighth Amendment claim, "the very three-drug protocol approved by the Supreme Court in *Glossip* is the same one Alabama will use here."⁴²

---

40. *Bucklew*, No. 17-8151, slip op. at 21.
41. *Brooks v. Warden*, 810 F.3d 812, 818 (11th Cir. 2016) (citations omitted).
42. *Id.* at 823.

11

Second, the other factors counsel against granting a stay. The Supreme Court has held that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence."[43] For this reason, "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts."[44] As the Supreme Court noted in *Bucklew*:

> Mr. Bucklew committed his crimes more than two decades ago. He exhausted his appeal and separate state and federal habeas challenges more than a decade ago. Yet since then he has managed to secure delay through lawsuit after lawsuit. He filed his current challenge just days before his scheduled execution. That suit has now carried on for five years and yielded two appeals to the Eighth Circuit, two 11th-hour stays of execution, and plenary consideration in this Court. And despite all this, his suit in the end amounts to little more than an attack on settled precedent, lacking enough evidence even to survive summary judgment—and on not just one but many essential legal elements set forth in our case law and required by the Constitution's original meaning.[45]

Here, the rights of the victims of Price's crime, the State, and the public interest at large heavily outweigh Price's request for a stay. Carrying out Price's lawful sentence pursuant to a state conviction "acquires an added moral dimension" because his postconviction proceedings have run their course.[46] Price has been on death row for more than twenty-five years for a crime he committed

---

43. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).
44. *Id.*
45. *Bucklew*, 2019 WL 1428884, at *14.
46. *Calderon v. Thompson*, 523 U.S. 538, 556 (1998).

in 1993. His crime was particularly heinous, as the trial court explained in sentencing him.[47] His conviction is valid, and a competent state court with jurisdiction over his case properly set his execution date according to Alabama law. Price initiated his first § 1983 litigation one month after the State moved for his execution date in 2014 and the current § 1983 litigation two weeks after the State moved for a date in 2019. He has failed twice to state a claim sufficient to survive summary judgment, and his current federal litigation is nothing but a meritless delay tactic. This Court should strongly consider Alabama's interest in enforcing its criminal judgment and deny Price's request.

---

47. C. 215; *see* Doc. 19 at 4 (quoting sentencing order).

## **CONCLUSION**

For the reasons discussed above and in Defendants' motion for summary judgment, the Court should grant summary judgment to Defendants and deny Price's cross-motion and motion for stay of execution.

Respectfully submitted on this the 2nd day of April 2019.

STEVE MARSHALL
ATTORNEY GENERAL OF ALABAMA
BY—


***/s/ Lauren A. Simpson***
Lauren A. Simpson
Beth Jackson Hughes
Henry M. Johnson
*Alabama Assistant Attorneys General*
Counsel for Defendants

**CERTIFICATE OF SERVICE**

I certify that on April 2, 2019, I served a copy of the foregoing upon counsel for the Plaintiff by filing the same via the Court's CM/ECF system, which shall cause the same to be electronically transmitted to: **Aaron M. Katz** and **Jonathan R. Ference-Burke**.

/s/ *Lauren A. Simpson*
Lauren A. Simpson
*Alabama Assistant Attorney General*
State of Alabama

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152
Tel: (334) 242-7300
Fax: (334) 353-3637
E-mail: lsimpson@ago.state.al.us