**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER LEE PRICE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION: 1:19-00057-KD-MU** |
| | ) | |
| **JEFFERSON S. DUNN,** *et al.,* | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter came before the Court on April 4, 2019 for a hearing regarding Plaintiff's Emergency Motion for Preliminary Injunction seeking a Stay of Execution (Doc. 28); Defendants' Motion for Summary Judgment (Doc. 19), Plaintiff's Response/Cross-Motion for Summary Judgment (Doc. 29) and Defendants' Reply (Doc. 31). The Court addresses the Motion to Stay by reviewing the merits of the parties' cross motions for summary judgment and the evidence submitted in support. Upon consideration, the Court finds that Price's motion for summary judgment and his motion to stay are **DENIED**.

## I.    Background and Undisputed Facts

This case concerns the execution protocol for a State of Alabama death row inmate at the Holman Correctional Facility (Holman). Specifically, inmate Plaintiff Christopher Lee Price (Price)'s execution date is set for April 11, 2019. (Doc. 19-5). Price is presently scheduled to be executed via the three (3) drug midazolam hydrochloride based lethal injection protocol. Price seeks execution via a nitrogen hypoxia protocol instead. Price alleges that by refusing to execute him via nitrogen, the State of Alabama is violating his rights under the Eighth Amendment and the equal protection clause of the Fourteenth Amendment.

1

**A.** **Background**

Price has been on death row at Holman since 1993, following a capital murder conviction

for the 1991 murder of William Lynn. As summarized by the Eleventh Circuit:

> Price was indicted for intentionally causing Bill Lynn's death during a robbery in the first
> degree. *See Price v. State,* 725 So.2d 1003, 1062 (Ala. Crim. App. 1997), *aff'd sub nom*.
> *Ex parte Price*, 725 So.2d 1063 (Ala. 1998). Following a jury trial, Price was convicted
> and sentenced to death for Lynn's murder. *Id.* at 1011. Though Price filed a direct appeal
> of his conviction and death sentence, both were affirmed. *See id.* at 1062, *aff'd*, 725
> So.2d 1063 (Ala. 1998). Price's conviction and sentence became final in May 1999 after
> the Supreme Court denied his petition for writ of certiorari to the Supreme Court of
> Alabama. *See Price v. Alabama*, 526 U.S. 1133…(1999).
>
> Price then filed a state post-conviction Rule 32 petition, but the petition was denied, and
> the Court of Criminal Appeals of Alabama affirmed the dismissal. *See Price v. State*, 880
> So.2d 502 (Ala. Crim. App. 2003). The Alabama Supreme Court denied certiorari review.
> *Ex parte Price*, 976 So.2d 1057 (Ala. 2006).
>
> Later, Price filed a petition for writ of habeas corpus in the Northern District of Alabama.
> The district court issued an opinion denying the petition with prejudice and entering
> judgment against Price. This Court affirmed that judgment. *See Price v. Allen*, 679 F.3d
> 1315, 1319–20, 1327 (11th Cir. 2012) (per curiam). The Supreme Court also denied
> Price's petition for writ of certiorari. *Price v. Thomas*, 568 U.S. 1212…(2013).

Price v. Commissioner, Ala. Dept. of Corr., 752 Fed. Appx. 701, 703 (11th Cir. 2018).

In 1995, Alabama executed inmates by electrocution. That changed on July 1, 2002,

when the Alabama legislature adopted lethal injection as the state's preferred form of execution.

Arthur v. Commissioner, Ala. Dept. of Corr., 840 F.3d 1268, 1274 (11th Cir. 2016); Brooks v.

Warden, 810 F.3d 812, 823 (11th Cir. 2016). At that time, the Alabama Department of

Corrections ("ADOC") began using a three (3) drug lethal injection protocol as its default

method of execution (instead of electrocution, as death row inmates from that point forward had

to affirmatively elect electrocution). Id. From 2002-April 2011, the first drug was sodium

thiopental, but from April 2011 through September 10, 2014, Alabama changed the protocol to

use penobarbital as the first drug.  Id.  However, due to pentobarbital's increasing unavailability,

starting on September 11, 2014, and continuing to the present, the ADOC substituted midazolam

hydrochloride for pentobarbital as the first drug.  Id.

On September 11, 2014, the State of Alabama moved for the Alabama Supreme Court to

set an execution date for Price.  This prompted Price's October 8, 2014 action in this Court -- his

first Section 1983 case -- Price v. Thomas et al., CV 1:14-00472-KD-C (S.D. Ala.), challenging

the constitutionality of the ADOC's three (3) drug lethal injection protocol as unconstitutionally

cruel and unusual.  See also Price v. Dunn, 2017 WL 1013302 (S.D. Ala. Mar. 15, 2017).  In

March 2015, the State asked the Alabama Supreme Court to hold the execution motion in

abeyance pending resolution of Glossip v. Gross, 135 S.Ct. 2726 (2015), a challenge to a three

(3) drug midazolam protocol functionally identical to Alabama's.  The court granted the motion.

Later in 2015, the Supreme Court held in part that the inmate petitioners in Glossip had

failed to establish an Eighth Amendment violation because they failed to identify an available

alternative method of execution that entailed a lesser risk of pain.  Following Glossip, the State

moved to dismiss Price's Section 1983 complaint, but the Court allowed Price to amend his

complaint.  As an alternative to the midazolam protocol, Price proposed the use of compounded

pentobarbital or sodium thiopental.  The parties engaged in discovery, culminating in a non-jury

trial in December 2016 on the sole issue of the availability of an alternative method of execution

to the State's midazolam included execution protocol   On March 15, 2017, this Court entered

judgment in favor of the State, finding that Price failed to prove the existence of a substantially

safer alternative available to the ADOC.  (Doc. 107 -- CV 1:14-00472-KD-C).

On September 19, 2018, after holding oral argument, the Eleventh Circuit affirmed this

Court's decision and denied rehearing on December 26, 2018. The Eleventh Circuit's mandate issued January 3, 2019. Price is now pursuing *certiorari* review before the Supreme Court.

On March 22, 2018, the ADOC's injection protocol changed again. Through Act 2018-353, nitrogen hypoxia became a statutorily approved method of execution in the State of Alabama (death row inmates could elect for this protocol, as specified by the statute, instead of execution via the midazolam three (3) drug protocol).

On February 8, 2019, Price filed *this* Section 1983 claim to enjoin the State from executing him via the midazolam three (3) drug protocol. (Doc. 1). Price alleges three (3) causes of action against the Defendants (the State): 1) violation of the Eighth Amendment's ban on cruel and unusual punishment (first cause of action); 2) violation of his Fourteenth Amendment equal protection rights for failure to consistently comply with execution protocol (second cause of action)[1]; and 3) violation of his Fourteenth Amendment equal protection rights due to the State's refusal to allow him to elect nitrogen hypoxia (third cause of action). (Id.) As relief, Price seeks that this Court:

> ….Enjoin Defendants from executing Mr. Price using the lethal injection protocol that the State asserts that it adopted on September 10, 2014, as well as the inadequate anesthesia and execution procedures that violate Mr. Price's right to equal protection under the Fourteenth Amendment and his right to be free from cruel and usual punishment under the Eighth Amendment.

> ….Order Defendants to disclose to Mr. Price and his counsel the precise lethal injection protocol that will be used during Mr. Price's execution at least 90 days in advance of such execution, including a detailed description of the "consciousness checks" that will be utilized and the qualifications and training of the personnel designated to carry out such checks.

> …Enter a declaratory judgment that Defendants' proposed execution protocol, inadequate

---

[1] This cause of action has not been pursued in the current motions.

anesthesia, and execution procedures violate Mr. Price's right to equal protection pursuant to the Fourteenth Amendment and….right to be free from cruel and unusual punishment pursuant to the Eighth Amendment….

(Id. at 31-32). On March 1, 2019, the Alabama Supreme Court scheduled Price's execution for April 11, 2019. (Doc. 19-5).

**B.**     <u>Alabama Code § 15-18-82.1(b)(2)</u>

The nitrogen hypoxia execution protocol became a statutorily approved method of execution in the State of Alabama in March 2018, with an effective date of June 1, 2018. The applicable statute, Section 15-18-82.1(b)(2) <u>Ala</u>. <u>Code</u>, provides, in relevant part, that an inmate whose conviction was final prior to June 1, 2018, had thirty (30) days *from that date* to inform the warden of the correctional facility in which he was housed that he was electing to be executed by the nitrogen hypoxia method. In other words, an inmate such as Price had until **June 30** within which to so elect.

"The State of Alabama did not create a standardized election form for this purpose." (Doc. 19 at 11). Instead, on June 22, 2018, an election form was drafted by Spencer Hahn, Federal Defender with the office of the Federal Defenders (MDALA). (Doc. 29-3 at 2, 5 (Aff. Palombi)). On June 26, 2018, Hahn and John Palombi, Assistant Federal Defender (MDALA), met with eight (8) death row inmate clients at Holman -- which did not include Price -- and provided the form to them, explaining the details of same in the attorney-client context. (Doc. 29-3 at 2-3 (Aff. Palombi)). Following the Federal Defenders' visit, the Warden distributed blank reproductions of the form to death row inmates.

Specifically, per the State:

….all inmates sentenced to death prior to the adoption of nitrogen hypoxia as a method of

5

execution were given a one-time thirty-day period in which to elect this method of execution immediately following the enactment of Alabama Act 2018-353. As the act was enacted on June 1, 2018 inmates had until June 30, 2018, to make this election. [ ] Every death-row inmate at Holman…including Price, was given an election form on the order of Warden Stewart…Defendants deny that they made any attempt to keep these election forms secret or that they entered into secret agreements…

***

… inmates…had a thirty-day period from the enactment in which to elect nitrogen hypoxia. This period lasted from June 1–30, 2018….

***

…All such inmates, including Price, were given the same thirty-day election period and an election form…

(Doc. 12 at 2-3, 6, 11 (footnotes omitted)).   According to ADOC Captain Jeff Emberton (Emberton), the Warden directed him to give every death row inmate at Holman a copy of the form and an envelope, to complete and return to the Warden, if the inmate decided to make the election.  Emberton attests as follows:

In mid-June 2018, after Alabama introduced nitrogen asphyxiation as a method of execution, Warden Cynthia Stewart tasked me with giving every death row inmate an election form and an envelope. If an inmate wished to be executed by nitrogen asphyxiation, he was to sign and date the form and put it in the envelope, which would be delivered to Warden Stewart.

… The form I handed out stated:

ELECTION TO BE EXECUTED BY NITROGEN HYPOXIA

Pursuant to Act No. 2018-353, if I am to be executed, I elect that it be by nitrogen hypoxia rather than by lethal injection.

This election is not intended to affect the status of any challenge(s) (current or future) to my conviction(s) or sentence(s), nor waive my right to challenge the constitutionality of any protocol adopted for carrying out executions by nitrogen hypoxia.

Dated this_____ day of June, 2018.

…I delivered a form and an envelope to every death row inmate at Holman as instructed….

6

(Doc. 19-1 at 2-3 (Aff. Pemberton); Doc. 19-2 at 2. While Emberton states it was mid-June when the form was disbursed, it is not contested that the form used by the Warden was the one drafted on June 22, 2018 and given by the Federal Defender to his clients on June 26, 2018. Accordingly, Price could not have received the election form prior to June 22, 2018.

On summary judgment, the State produced nitrogen hypoxia election forms for three (3) prisoners, signed on June 26 or 27, 2018, which had been timely submitted to the Warden. (Doc. 19-6). Overall, 48 Alabama inmates elected nitrogen hypoxia. (Doc. 19 at 12). Price did not submit a nitrogen hypoxia election form to the Warden between June 1-30, 2018.

On January 11, 2019, the State asked the Alabama Supreme Court to set Price's execution date. According to Price, on January 12, 2019 his counsel first learned about inmates being able to elect to use nitrogen hypoxia. On January 27, 2019, counsel wrote a letter to the Warden attempting to elect nitrogen hypoxia for Price. In response, the Warden stated the request was "past the deadline of June 2018[,]" adding she did not "possess the authority to grant, deny or reject your request." (Doc. 19-3 (undated letter)). On February 4, 2019, Price's counsel contacted counsel for the State via e-mail asking to elect nitrogen hypoxia. (Doc. 29-2). Price's request was denied because the statutory thirty (30) day election period had expired. (Id.)

On February 8, 2019, Price initiated this litigation claiming that the State is violating his constitutional rights by refusing to allow him to elect nitrogen hypoxia for his execution. On March 1, 2019, the Alabama Supreme Court set Price's execution for April 11, 2019. (Doc. 19-5).

## II.    <u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

R. CIV. P. 56(a).  Rule 56(c) provides as follows:

> *(c) Procedures*
> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an

essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment. See, e.g., Am. Bankers Ins. Group v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005); Gerling Global Reins. Corp. of Am. v. Gallagher, 267 F.3d 1228, 1233 (11th Cir. 2001). "Cross-motions….will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed…." United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted). "When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." Muzzy Prods., Corp. v. Sullivan Indus., Inc., 194 F.Supp.2d 1360, 1378 (N.D. Ga. 2002). The Court has reviewed the facts and made its own examination of the record.

## III. Discussion

At issue is Price's execution method -- the three (3) drug lethal injection protocol. Price contends that he should be able to elect the nitrogen hypoxia protocol instead.

## A. Fourteenth Amendment -- Equal Protection

Price contends that the State has violated his equal protection rights under the Fourteenth Amendment by refusing to allow him to elect execution by nitrogen hypoxia.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall deny to any person within its jurisdiction the equal protection of the laws. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1989). To state an equal protection claim, Price must show the State will treat him disparately from other similarly situated persons, and that such treatment interferes with a fundamental right, discriminates against a suspect class, or is not rationally related to a legitimate government interest. Arthur v. Thomas, 674 F.3d 1257, 1262 (11th Cir. 2012) (internal citations omitted) ("…Arthur first has to 'show that the State will treat him disparately from other similarly situated persons,'….Second, '[i]f a law treats individuals differently on the basis of...[a] suspect classification, or if the law impinges on a fundamental right, it is subject to strict scrutiny.'…Otherwise, Arthur must 'must show that the disparate treatment is not rationally related to a legitimate government interest.'…[]").

Alabama Code Section 15-18-82.1 provides in relevant part: "[t]he election for death by nitrogen hypoxia is waived unless it is personally made by the person in writing and delivered to the warden of the correctional facility within 30 days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death. *If a certificate of judgment is issued before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date.*" Ala. Code § 15-18-82.1(b)(2) (emphasis added). As expressed in Price, 752 Fed. Appx. at 703-704 at note 3:

> …effective June 1, 2018, a person sentenced to death in Alabama had the opportunity to elect that his death sentence be executed by electrocution or nitrogen hypoxia. The statute provides that election of death by nitrogen hypoxia is waived unless it is personally made by the inmate in writing and delivered to the warden...If a judgment was issued before June 1, 2018, the election must have been made and delivered to the warden within 30 days of June 1, 2018…... We have not been advised by either party that Price opted for death by nitrogen hypoxia, so his § 1983 claim is not moot.

The evidence reveals the existence of election forms submitted by death row inmates to the Warden at Holman. All death row inmates were given the same election form. Price does not allege that he was *not* given the form, or that he was *not* given the option to make the same election.

Price argues that his right to equal protection has been violated because he is being treated differently than similarly situated death row inmates "whom the State has agreed to execute using nitrogen hypoxia." And, although he did not timely elect execution by nitrogen hypoxia, Price contends that the State has no rational basis for refusing to let him join the class of inmates who did so elect.

Price points to three (3) actions by the State that violate his right to equal protection. First, Price contends that the State law is unconstitutional because it treats similarly situated people differently based on criteria (whether the inmate submitted a nitrogen hypoxia "election" form by June 30, 2018) that does not rationally further any legitimate state interest.

As stated, Price has to "show that the State will treat him disparately from other similarly situated persons." Price contends that for purposes of classifying inmates with respect to method of execution, an inmate's satisfaction of the June 30, 2018 deadline is not a "'*relevant*' difference between inmates that are otherwise identical." (Doc. 29-1 at 15). Price argues the deadline is "completely arbitrary" such that that State has no rational basis to use an inmate's timely election as the criterion for determining an inmate's execution protocol.

In analyzing whether there is a rational basis for the challenged legislative action, the Supreme Court has explained:

We many times have said, and but weeks ago repeated, that rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313, 113 S.Ct. 2096, 2100–2101, 124 L.Ed.2d 211 (1993). See also, *e.g., Dandridge v. Williams,* 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). Nor does it authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) *(per curiam).* For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. See, *e.g., Beach Communications, supra,* 508 U.S., at 314–315, 113 S.Ct., at 2096; *Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 462, 108 S.Ct. 2481, 2489, 101 L.Ed.2d 399 (1988); *Hodel v. Indiana,* 452 U.S. 314, 331–332, 101 S.Ct. 2376, 2386–2387, 69 L.Ed.2d 40 (1981); *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976) *(per curiam).* Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. See, *e.g., Nordlinger v. Hahn,* 505 U.S. 1, 11, 112 S.Ct. 2326, 2331–2332, 120 L.Ed.2d 1 (1992); *Dukes, supra,* 427 U.S., at 303, 96 S.Ct., at 2516. Further, a legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger, supra,* 505 U.S., at 15, 112 S.Ct., at 2334. See also, *e.g., United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980); *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 528, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959). Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Communications, supra,* 508 U.S., at 313, 113 S.Ct., at 2101. See also, *e.g., Nordlinger, supra,* 505 U.S., at 11, 112 S.Ct., at 2334; *Sullivan v. Stroop,* 496 U.S. 478, 485, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990); *Fritz, supra,* 449 U.S., at 174–179, 101 S.Ct., at 459–461; *Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979); *Dandridge v. Williams, supra,* 397 U.S., at 484–485, 90 S.Ct., at 1161–1162.

A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications, supra,* 508 U.S., at 315, 113 S.Ct. at 2098. See also, *e.g., Vance v. Bradley, supra,* 440 U.S., at 111, 99 S.Ct., at 949; *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 812, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976); *Locomotive Firemen v. Chicago, R.I. & P.R. Co.,* 393 U.S. 129, 139, 89 S.Ct. 323, 328, 21 L.Ed.2d 289 (1968). A statute is presumed

constitutional, see *supra,* at 2642, and "[t]he burden is on the one attacking the legislative arrangement to negate every conceivable basis which might support it," *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973) (internal quotation marks omitted), whether or not the basis has a foundation in the record. Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it "'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams, supra,* 397 U.S., at 485, 90 S.Ct., at 1161, quoting *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913). See also, *e.g., Burlington Northern R. Co. v. Ford,* 504 U.S. 648, 651, 112 S.Ct. 2184, 2187, 119 L.Ed.2d 432 (1992); *Vance v. Bradley, supra,* 440 U.S., at 108, and n. 26, 99 S.Ct., at 948 and n. 26; *New Orleans v. Dukes, supra,* 427 U.S., at 303, 96 S.Ct., at 2516; *Schweiker v. Wilson,* 450 U.S. 221, 234, 101 S.Ct. 1074, 1082, 67 L.Ed.2d 186 (1981)…..

Heller v. Doe by Doe, 509 U.S. 312, 319–21, 113 S.Ct. 2637, 2642–43, 125 L.Ed.2d 257 (1993).

Accordingly, it is Price's burden to negate every conceivable basis which might support the requirement that he had to elect nitrogen hypoxia before June 30, 2018 or face execution by lethal injection. Price has failed to do so.

The State contends that it has a legitimate interest in effecting, as efficiently as possible, death sentences. The State contends that a deadline was necessary so that the State could proceed expeditiously with the execution of prisoners whose conviction and sentence were final. The State explains that before an execution goes forward, an execution date must be set by the Alabama Supreme Court. The State signals that it is prepared to go forward with the execution by filing a motion to set an execution date in the Alabama Supreme Court. When the request is made, the State represents to the Alabama Supreme Court that the prisoner's conviction and sentence are final.

It is rational for the State of Alabama to give a deadline to inmates for electing nitrogen hypoxia, whereas to further the State's interest in to providing the State officials the opportunity to plan for the execution of eligible inmates. Price has not negated this rational basis for the thirty day requirement.

Price also asserts that as applied to him, the thirty day deadline line violates his right to equal protection. In support, Price points to the fact that eight death row inmates who had an Eighth Amendment challenge to the lethal injection protocol pending in June 2018 (see In re: Alabama Lethal Injection Protocol Litigation, 2:12-CV-00316-WKW (M.D. Ala.)), settled their claim as follows: in return for a timely election of nitrogen hypoxia the inmates were given an assurance from the state that ALDOC would not execute the inmates by lethal injection. (Doc. 29-3 at 4 (Aff. Palombi)). From this fact, Price claims that he has received unequal treatment from the State because the State will not make the same offer to him, although he has a pending challenge. The problem with this argument is that Price is not similarly situated to these eight inmates. These inmates, who were given the assurance in settlement of their challenge to lethal injection that they would not be executed by lethal injection, made a timely election(i.e., by June 30). Price did not make a timely election of nitrogen hypoxia.

A slight variation of the preceding argument is that Price was not treated the same as the inmates who had a pending challenge to the lethal injection protocol because he was not offered a timely settlement by the State. The argument is once the State decided to settle the challenge in the M.D. Ala. action 2:12-CV-00316-WKW, the State was obligated to reach out to Price's counsel in a timely manner with the same settlement offer to his 2014 challenge that was pending

14

at that time. While this would seem to have been a prudent action by the State, the question is whether the State violated Price's right to equal protection by failing to do so.

Unfortunately, Price fails to cite any specific authority to support the proposition that the State must, pursuant to the equal protection clause, settle all pending challenges to the lethal injection protocol in the same manner. But as with any equal protection claim, the Court's analysis starts with whether Price was similarly situated to the eight inmates whose challenge to the lethal injection was mooted by settlement. The most glaring difference between Price and those inmates is the stage of the litigation. The M.D. Ala. inmates were offered a settlement near their trial date. Price, on the other hand, had not prevailed in this Court and was on appeal to the Eleventh Circuit. Briefs had been filed, oral argument had been held, and the parties were awaiting a decision. Accordingly, the State's interest in settling the claims of the pre-trial inmates, where uncertainty was greater, was markedly different than settling Price's challenge. Accordingly, the Court cannot find that Price was similarly situated to the eight inmates.

Last, Price asserts that the <u>Alabama</u> <u>Code</u> § 15-18-82.1(b)(2) presupposes that any waiver of execution by nitrogen hypoxia is only valid if he received adequate notice from the State regarding his right to elect nitrogen hypoxia. Price contends that the notice to him was wholly inadequate because the State failed to adequately apprise him of his right.

The State asserts that Price cannot prevail on this claim because he cannot show that he was treated differently by the State from his fellow Holman death row inmates. The State points out that the State gave Price the same notice and opportunity to elect nitrogen hypoxia as was given to the other Holman death row inmates.

Price does not dispute this assertion as it relates to fact that all inmates were given the same form. Instead, Price takes issue with the fact that most of the inmates that timely elected were represented by the Federal Defender's Office and that these inmates were given a full explanation of their rights by the Federal Defender before being given the form. The court is unable to ascertain how this fact supports unequal treatment **by the State** of similarly situated inmates. Rather, this appears to be disparity in treatment by Price's counsel compared to the Federal Defenders' treatment of their clients. Such is not a cognizable equal protection claim. Price fails to state an equal protection claim based on the assertion that he did not receive an adequate explanation of his rights in conjunction with receiving the waiver form.

Price also asserts that he has not validly waived his right to elect execution by nitrogen because he was not adequately aware of the rights he waived by inaction. Price cites in support of this statement two Alabama cases: a case regarding waiver of contractual rights (Ex parte Spencer, 111 So.3d 713 (Ala. 2012)) and a case regarding waiver of a spouse's statutory right to an elective share of an estate (Garrard v. Lang, 514 So.2d 933 (Ala. 1987). The Court fails to see how either of these cases supports an equal protection claim, or any other constitutional claim.

Accordingly, Price's cross-motion for summary judgment on this claim is **DENIED**.

**B.      Eighth Amendment -- Alternative Method of Execution**

Death row inmates seeking to challenge a state's method of execution must satisfy a "heavy burden." Baze v. Rees, 553 S.Ct. 1520, 1533 (2008). The question on summary judgment is whether Price has satisfied his burden under Baze, *supra*, and Glossip v. Gross, 135 S.Ct. 2726 (2015). The Supreme Court recently addressed this burden, specifying precisely *when* and *how* the Eighth Amendment "comes into play:"

…the Eighth Amendment does not guarantee a prisoner a painless death….*Glossip*, 576 U.S., at —, 135 S.Ct., at 2732–2733[.]…[but] forbid[s]….long disused (unusual) forms of punishment that intensified the sentence of death with a (cruel) "'superadd[ition]'" of "'terror, pain, or disgrace.'" *Baze*, 553 U.S. at 48, 128 S.Ct. 1520; *accord, id.,* at 96, 128 S.Ct. 1520 (THOMAS, J., concurring in judgment).

This Court has yet to hold that a State's method of execution qualifies as cruel and unusual, and perhaps understandably so. Far from seeking to superadd terror, pain, or disgrace to their executions, the States have often sought more nearly the opposite….

….how can a court determine when a State has crossed the line? THE CHIEF JUSTICE's opinion in *Baze*, which a majority of the Court held to be controlling in *Glossip*, supplies critical guidance. It teaches that where (as here) the question in dispute is whether the State's chosen method of execution cruelly superadds pain to the death sentence, a prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason. *See Glossip*, 576 U.S., at —— – ——, 135 S.Ct., 2732–2738; *Baze*, 553 U.S. at 52, 128 S.Ct. 1520. *Glossip* left no doubt that this standard governs "all Eighth Amendment method-of-execution claims." 576 U.S., at ——, 135 S.Ct., at 2731.

… *Baze* and *Glossip* recognized that the Eighth Amendment "does not demand the avoidance of all risk of pain in carrying out executions." *Baze*, 553 U.S. at 47, 128 S.Ct. 1520. To the contrary, the Constitution affords a "measure of deference to a State's choice of execution procedures" and does not authorize courts to serve as "boards of inquiry charged with determining 'best practices' for executions." *Id*., at 51–52, and nn. 2–3, 128 S.Ct. 1520. The Eighth Amendment does not come into play unless the risk of pain associated with the State's method is "substantial when compared to a known and available alternative." *Glossip*, 576 U.S., at ——, 135 S.Ct., at 2738; *see Baze*, 553 U.S. at 61, 128 S.Ct. 1520. Nor do *Baze* and *Glossip* suggest that traditionally accepted methods of execution….are necessarily rendered unconstitutional as soon as an arguably more humane method…becomes available. There are, the Court recognized, many legitimate reasons why a State might choose, consistent with the Eighth Amendment, not to adopt a prisoner's preferred method of execution. *See, e.g., Glossip*, 576 U.S., at —— – ——, 135 S.Ct., at 2737–2738 (a State can't be faulted for failing to use lethal injection drugs that it's unable to procure through good-faith efforts); *Baze*, 553 U.S. at 57, 128 S.Ct. 1520 (a State has a legitimate interest in selecting a method it regards as "preserving the dignity of the procedure"); *id*., at 66, 128 S.Ct. 1520 (ALITO, J., concurring) (a State isn't required to modify its protocol in ways that would require the involvement of "persons whose professional ethics rules or traditions impede their participation").

***

….Having (re)confirmed that anyone bringing a method of execution claim alleging the infliction of unconstitutionally cruel pain must meet the *Baze-Glossip* test, we can now turn to the question whether…[the inmate] is able to satisfy that test. Has he identified a feasible and readily implemented alternative method of execution the State refused to adopt without a legitimate reason, even though it would significantly reduce a substantial risk of severe pain?...

*** 

***First***, an inmate must show that his proposed alternative method is not just theoretically "'feasible'" but also "'readily implemented.'" *Glossip*, 576 U.S., at —— – ——, 135 S.Ct., at 2737–2738. This means the inmate's proposal must be sufficiently detailed to permit a finding that the State could carry it out "relatively easily and reasonably quickly." *McGehee v. Hutchinson*, 854 F.3d 488, 493 (CA8 2017); *Arthur v. Commissioner, Ala. Dept. of Corrections,* 840 F.3d 1268, 1300 (CA11 2016)….

*** 

***Second***, and relatedly, the State had a "legitimate" reason for declining to switch from its current method of execution as a matter of law. *Baze*, 553 U.S. at 52, 128 S.Ct. 1520….

*** 

…**[Third/And]** [e]ven if a prisoner can carry his burden of showing a readily available alternative, he must still show that it would significantly reduce a substantial risk of severe pain. *Glossip*, 576 U.S., at ——, 135 S.Ct., at 2737–2738; *Baze*, 553 U.S. at 52, 128 S.Ct. 1520. A minor reduction in risk is insufficient; the difference must be clear and considerable….

Buckley v. Precythe, __S.Ct._, 2019 WL 1428884, *7-8, 11-12 (Apr. 1, 2019) (emphasis in

original (italics) and emphasis added (bold)).

### 1.    Availability: Feasible & Readily Implemented

For the first factor, Price must show that execution by nitrogen hypoxia is available,

meaning it is feasible and readily implemented for the State to carry out.  Price, 752 Fed. Appx.

at 708 (stating that the inmate must show "the State actually has access to the alternative" and "is

able to carry out the alternative method of execution relatively easily and reasonably quickly[]");

Boyd v. Warden, Holman Corr. Fac., 856 F.3d 853, 868 (11th Cir. 2017) ("'[f]easible' means

'capable of being done, executed, or effected[,]'…[a]nd 'readily' means 'with fairly quick

efficiency,' 'without needless loss of time,' 'reasonably fast,' or 'with a fair degree of ease[]'…for the state seeking to carry out the execution[]").

Price identified an alternative method of execution -- nitrogen hypoxia – that is an approved method of execution in the State of Alabama. Price has submitted evidence that nitrogen hypoxia is readily available for purchase. (Doc. 29-4 (Aff. Kennedy and Ex. A thereto)).

According to the State, Price cannot satisfy this factor because he failed to timely elect nitrogen hypoxia, and so "as a matter of law, nitrogen hypoxia will not be available to Price unless both lethal injection and electrocution are held to be unconstitutional by the Alabama Supreme Court or the United States Supreme Court." (Doc. 19 at 21). The Court cannot agree. Availability "to or for the state" -- not "available for him" -- is the measuring stick. See e.g., Boyd, 856 F.3d at 868 (discussing availability as available "*for the state* seeking to carry out the execution[]" (emphasis added); In re Ohio Execution Protocol, 860 F.3d 881, 890 (6th Cir. 2017) (discussing availability in terms of alternatives available *to the state* of Ohio). Alabama specifically made execution by nitrogen hypoxia execution available, as a matter of statutory law, on June 1, 2018.

Next, the court considers whether execution by nitrogen hypoxia can be "readily implemented" by the State. The State asserts that the ADOC has yet to finalize a nitrogen hypoxia protocol. At oral argument, the State was reluctant to give a status regarding the development of the nitrogen hypoxia protocol, other than to say that execution by nitrogen hypoxia would likely not be available until at least the end of summer 2019.

Bucklew instructs that Price's execution proposal "must be sufficiently detailed to permit a finding that the State court carry it out 'relatively easily and reasonably quickly.'" Bucklew, 2019 WL 1428884 at *11. But as Price pointed out at oral argument, this requirement in Bucklew appears to have been imposed on plaintiffs who were seeking to have their State implement an execution method that had not been approved by the State. However, it is still Price's burden to show that the State could "readily implement" execution by nitrogen hypoxia. Price proposes, without evidence, that the State merely has to purchase readily available nitrogen[2], a hose and a mask to implement execution by nitrogen.

The Court agrees with the State that it is not that simple. The Court has little evidence as to how nitrogen gas would be administered or how the State might ensure the safety of the execution team and witnesses. Accordingly, the Court cannot find, based on the current record, that execution by nitrogen hypoxia may be readily implemented by the State.

  **2.**   **Legitimate Reason**

To establish this factor, Price must show that the State lacks a "legitimate" reason for declining to switch from lethal injection to nitrogen hypoxia, for his April 11, 2019 execution. Bucklew, *supra*.

Similar to Bucklew, 2019 WL 1428884*, *11, regarding the proposed method, Alabama has not yet used nitrogen hypoxia to carry out an execution and so has no track record of successful use: "choosing not to be the first to experiment with a new method of execution is a legitimate reason to reject it." However, distinct from Bucklew, Alabama chose the proposed (new) method of nitrogen hypoxia via passage of Alabama Code § 15-18-82.1(b)(2) in 2018, and

---

[2] Price presented evidence of the availability of nitrogen.

has already "switched" execution methods for those death row inmates who timely elected for execution by nitrogen hypoxia.

However, as discussed *supra* in relation to Price's equal protection claim, the State has a legitimate reason for denying Price his belatedly chosen method of execution. Accordingly, Price cannot prevail on this factor.

### 3.     Significant Reduction of a Substantial Risk of Severe Pain

The final factor of an Eighth Amendment execution method challenge focuses on substantial harm or pain to the inmate. Specifically, Price must show that execution by nitrogen hypoxia would significantly reduce a **substantial** risk of severe pain to him. Notably, "a minor reduction in risk is insufficient; the difference must be clear and considerable." Bucklew, 2019 WL 1428884, *12. See also Price 752 Fed. Appx. at 705 (an inmate cannot make a successful challenge by showing a "'slightly or marginally safer alternative.'" *Id*. (quoting *Baze*, 553 U.S. at 51…).").  Price must demonstrate "that the [lethal injection] method presents a risk that is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers." Glossip, 135 S.Ct. at 2737 (quoting Baze, 553 U.S. at 50) (italics and internal quotation marks omitted).

Price has submitted an affidavit from Dr. David Lubarsky to support his claim that Alabama's three (3) drug lethal injection protocol is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers. Dr. Lubarsky avers:

- The midazolam protocol proposed by the state is an unsuitable method of execution for three reasons.
- First, it has a ceiling effect and cannot at any dose guarantee a person will be unconscious and insensate to the painful effects of the second and third drugs.

- Second, it has no analgesic properties and is not suitable for use as a stand-alone anesthetic -- if it does produce unconsciousness at the 500mg dose, the noxious stimuli of the second and third drugs will likely overcome any anesthetic effect.
- Third, it has an increased risk of paradoxical reactions in vulnerable populations, to which Price belongs, which would render the drug useless for deep anesthesia.
- Additionally, the protocol lacks appropriate safeguards to assess unconsciousness, lacks safeguards to assure viability of the intravenous access, and lacks specification of drug concentrations, appropriate timing, and specific method of drug administration, leading to an increased risk of erroneous administration.
- Using midazolam in the manner intended by Alabama creates a substantial risk of serious harm to Price.

(Doc. 28-1 (Aff. Lubarsky)).

Price must also show that nitrogen hypoxia will significantly reduce this **substantial** risk of severe pain. Dr. Lubarsky provides no opinion regarding the comparison between the pain incurred with the three (3) drug lethal injection protocol and that incurred with the administration of nitrogen hypoxia. Instead, Price submitted an academic study from East Central University entitled <u>Nitrogen Induced Hypoxia as a Form of Capital Punishment</u>, wherein the authors conclude that "[t]here is no evidence to indicate any substantial physical discomfort during" execution by nitrogen hypoxia. (Doc. 29-2 at 23).[3] The study also concluded that: 1) execution via nitrogen hypoxia would be a humane method to carry out a death sentence; 2) such protocol would not require the assistance of licensed medical professionals; 3) such protocol would be simple to administer; 4) nitrogen is readily available for purchase and sourcing would not pose a difficulty; and 5) such protocol would not depend upon the cooperation of the offender being executed. <u>Id</u>.

---

[3] Price notes that Oklahoma relied on this study in approving nitrogen hypoxia as an execution method.

In this proceeding, the State presented no evidence to rebut Price's contention that the current lethal injection protocol would cause him serious harm and needless suffering.[4]  Nor did the State challenge Price's evidence that execution by nitrogen would likely not result in substantial physical discomfort.  Based on the evidence presented by Price, the Court finds that Price is likely to prevail on the issue of whether execution by nitrogen (which Price's evidence shows is not likely to result in any substantial physical discomfort) would provide a significant reduction in the substantial risk of severe pain Price would incur if he were executed using the three (3) drug lethal injection method.

However, because Price fails to show that execution by nitrogen is readily implemented, his claim must fail and his motion for summary judgment **DENIED**.

### D.      **Preliminary Injunction/Motion for Stay of Execution**[5]

"Injunctive relief, including a stay of execution, is an equitable remedy that is not available as a matter of right. *Brooks v. Warden*, 810 F.3d 812, 824….(11th Cir. Jan. 19, 2016)…As the Supreme Court has recognized, 'equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts.' *Hill*, 547 U.S. at 584…" Jones v. Commissioner, Ga. Dept. of Corr., 812 F.3d 923, 932 (11th Cir. 2016).   Indeed, "[a] preliminary injunction is an extraordinary and drastic remedy not to be

---

[4] At oral argument the State referenced, without any detail, that they had submitted evidence in the 2014 proceeding.  While the 2014 proceeding was the undersigned's case, the court never reached the issue of whether Price had established that he would suffer severe pain because Price was unable to point to an available alternative.

[5] Grayson v. Warden, Comm'r, Ala. DOC, 869 F.3d 1204, 1239 at note 90 (11th Cir. 2017) ("[t]he same four-part test applies when a party seeks a preliminary injunction" and a stay of execution).

granted unless the movant clearly establishes the burden of persuasion as to the four requisites."

Am. Civil Liberties Union of Fla., Inc. v. Miami–Dade Cty. Sch. Bd., 557 F.3d 1177, 1198 (11th

Cir. 2009). "[I]ts grant is the exception rather than the rule[.]" Siegel v. LePore, 234 F.3d 1163,

1176 (11th Cir. 2000).

> Recently, concerning motions to stay executions, the Supreme Court held:

> … The proper role of courts is to ensure that method-of-execution challenges to lawfully issued sentences are resolved fairly and expeditiously. Courts should police carefully against attempts to use such challenges as tools to interpose unjustified delay. Last-minute stays should be the extreme exception, not the norm, and "the last-minute nature of an application" that "could have been brought" earlier, or "an applicant's attempt at manipulation," "may be grounds for denial of a stay." *Hill*, 547 U.S., at 584 (internal quotation marks omitted)….

Bucklew, 2019 WL 1428884, *14.

> "It is by now hornbook law that a court may grant a stay of execution *only* if the moving

party establishes that: '(1) he has a substantial likelihood of success on the merits; (2) he will

suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm

the other litigant; and (4) if issued, the injunction would not be adverse to the public interest.'

*Powell v. Thomas*, 641 F.3d 1255, 1257 (11th Cir. 2011) (emphasis added))." Brooks, 810 F.3d

at 818. But where the plaintiff is a death row inmate who has brought a constitutional challenge

to his execution, the plaintiff's entitlement to a preliminary injunction staying his execution

"turns on whether [he can]….establish a likelihood of success on the merits." Glossip, 135 S.Ct.

at 2737. Specifically:

> …capital prisoners seeking a stay of execution must show "a likelihood that they can establish both that [the state's] lethal injection protocol creates a demonstrated risk of severe pain and that the risk is substantial when compared to the known and available alternatives." *Id.; see also id.* ("A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner...show[s] that the risk is substantial

24

when compared to the known and available alternatives." (quotation omitted and emphasis added))….

Brooks, 810 F.3d at 819 (citing Baze, 553 U.S. at 61).

Even so, "[a] stay of execution does not require an inmate to prove his case once and for all. But the standards require more than the mere existence of an evidentiary toss-up. A district court must make some findings that tilt the scales in the inmate's favor." Hamm v. Commissioner Ala. Dep't of Corr., 2018 WL 2171185, *4 (11th Cir. Feb. 13, 2018).

Based on the analysis of Price's claims, the court is unable to find that Price has a substantial likelihood of success on the merits. Accordingly, his motion to stay is **DENIED**.

## IV.   Conclusion

Based on the foregoing, it is **ORDERED** that the Plaintiff's motion for summary judgment (Doc. 29)   and   Plaintiff's motion for a preliminary injunction/stay of execution (Doc. 28) are **DENIED**.

**DONE** and **ORDERED** this the **5th** day of **April 2019.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**