[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11268
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cv-00057-KD-MU

CHRISTOPHER LEE PRICE,

Plaintiff - Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
WARDEN, HOLMAN CORRECTIONAL FACILITY,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(April 10, 2019)

Before TJOFLAT, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Christopher Lee Price, an Alabama prisoner sentenced to death for killing a man during the commission of a robbery, has moved this Court for an emergency stay of his execution, which is scheduled to take place on April 11, 2019, at 6:00 p.m. Central Standard Time at the Holman Correctional Facility ("Holman"). Price also appeals the district court's order denying his motion for preliminary injunction and its order denying his renewed motion for preliminary injunction. Included within those orders is the district court's denial of Price's Cross-Motion for Summary Judgment.[1] After careful consideration, we affirm the district court's denial of Price's Cross-Motion for Summary Judgment as well as its denial of Price's original and renewed motions for preliminary injunction. We also deny Price's motion for a stay of execution because he cannot show a substantial likelihood of success on his petition.

## I.   Background

Price was convicted of capital murder for killing William Lynn during the commission of a robbery, and Price was subsequently sentenced to death. *See Price v. State*, 725 So. 2d 1003, 1011 (Ala. Crim. App. 1997), *aff'd sub nom. Ex parte Price*, 725 So. 2d 1063 (Ala. 1998). Price filed a direct appeal of both his conviction and death sentence, but both were affirmed. *See Price*, 725 So. 2d at 1062, *aff'd*,

---

[1] Price's Notice of Appeal makes clear that he appeals from "any and all adverse rulings incorporated in, antecedent to, or ancillary to" those orders.

725 So. 2d 1063 (Ala. 1998).  Price's conviction and sentence became final in May 1999 after the Supreme Court denied his petition for writ of certiorari.  *See Price v. Alabama*, 526 U.S. 1133 (1999).

Price then filed a state post-conviction Rule 32 petition, but the petition was denied, and the Court of Criminal Appeals of Alabama affirmed.  *See Price v. State*, 880 So. 2d 502 (Ala. Crim. App. 2003).   The Alabama Supreme Court denied certiorari review.  *Ex parte Price*, 976 So. 2d 1057 (Ala. 2003).

Later, Price filed a petition for writ of habeas corpus in the Northern District of Alabama.  The district court issued an opinion denying the petition with prejudice and entering judgment against Price.  We affirmed that judgment.  *See Price v. Allen*, 679 F.3d 1315, 1319-20 (11th Cir. 2012) (per curiam).   The Supreme Court also denied Price's petition for writ of certiorari.  *Price v. Thomas*, 568 U.S. 1212 (2013).

Price filed a successive state post-conviction Rule 32 petition in 2017, arguing that his death sentence was unconstitutional under *Hurst v. Florida*, 136 S. Ct. 616 (2016).   That petition was also denied, and the Court of Criminal Appeals of Alabama affirmed.  *Price v. State*, No. CR-16-0785, 2017 WL 10923867 (Ala. Crim. App. Aug. 4, 2017), *reh'g denied* (Sept. 8, 2017).   The Alabama Supreme Court denied certiorari.

Following his direct criminal appeals and after the State moved the Alabama Supreme Court to set an execution date, Price brought a civil lawsuit under 42 U.S.C.

§ 1983 alleging that the Alabama Department of Corrections's ("ADOC") use of midazolam in its three-drug lethal-injection protocol violates the Eighth Amendment's ban on cruel and unusual punishment because it is not effective in rendering an inmate insensate during execution (the "first § 1983 action").  The district court held a bench trial on Price's § 1983 claim.  But the district court bifurcated the trial, addressing only whether Price could meet his burden of showing that his chosen alternative drug—pentobarbital—was available to the ADOC.  The district court found in favor of the ADOC and against Price.  It concluded that Price had failed to meet his burden of showing that pentobarbital was a feasible and available drug for use by the ADOC.

Price appealed and, on September 18, 2018, we affirmed.  *Price v. Comm'r, Ala. Dep't of Corr.,* 752 F. App'x 701 (11th Cir. 2018).  Price recently filed a petition for writ of certiorari with the Supreme Court of the United States.  That petition is currently pending.

## II.    Facts Relevant to this Appeal

While the appeal of Price's first § 1983 action was pending before this Court, the Alabama legislature amended the State's execution statute to add nitrogen hypoxia as an approved method of execution.  The amendment became effective on June 1, 2018.  *See* Ala. Code § 15-18-82.1.  The statute reads, in relevant part, "A death sentence shall be executed by lethal injection, unless the person sentenced to

death affirmatively elects to be executed by electrocution or nitrogen hypoxia." Ala. Code § 15-18-82.1(a).   The statute also provides that the election of death by nitrogen hypoxia is waived unless it is personally made by the inmate in writing and delivered to the warden within thirty days after the certificate of judgment pursuant to a decision by the Alabama Supreme Court affirming the sentence of death.   Ala. Code § 15-18-82.1(b)(2).  If a judgment was issued before June 1, 2018, as was the case with Price, the election must have been made and delivered to the warden within thirty days of June 1, 2018.  *See Id.*

On January 11, 2019, the State moved the Alabama Supreme Court to set an execution date for Price.  The Alabama Supreme Court granted the motion on March 1, 2019, ordering that Price be executed on April 11, 2019, by lethal injection.

In the meantime, on January 27, 2019, Price wrote a letter to the warden of Holman asking that he be executed by nitrogen hypoxia.[2]  The warden responded by notifying Price that his request was past the thirty-day deadline set forth in the statute.  Nevertheless, she further noted that she did not have the authority to grant, deny, or reject the request, and she indicated that any further consideration of the

---

[2] Price suggests that he was unaware of the ability to elect nitrogen hypoxia as a means of execution until his pro bono counsel, Aaron Katz, called Federal Public Defender John Palombi on January 12, 2019.  According to Price, during that phone conversation, Palombi "informed Attorney Katz about the Alabama legislature's March 2018 amendments to the State's execution protocol."  However, as we note later in this opinion, our opinion in Price's first § 1983 action, which we issued in September 2018, specifically referenced the fact that Alabama had adopted nitrogen hypoxia as a means of execution.  We further noted that Price apparently had not elected this option.

matter needed to go through Price's attorney to the Attorney General's Office. Price's attorney then reached out to the Attorney General's Office and reiterated Price's desire to "opt in to the nitrogen hypoxia protocol."  Assistant Attorney General Henry Johnson denied the request, citing the thirty-day period to opt into the protocol.

On February 8, 2019, (approximately one month after the State sought an execution date), Price filed a civil complaint against the Commissioner of the ADOC and others.  The new complaint set forth a § 1983 claim in which Price realleged many of the claims raised in his previous § 1983 action concerning the three-drug lethal-injection protocol (the "second § 1983 action").  For example, Price claims that the use of midazolam as the first drug in its three-drug lethal-injection protocol violates the Eighth Amendment's ban on cruel and unusual punishment.  The complaint in the second § 1983 action also alleges that the State violated Price's Fourteenth Amendment right to equal protection by refusing to allow him to elect nitrogen hypoxia as his method of execution.  With respect to that claim, Price contended that the State entered into "secret agreements" with many death row inmates allowing them to elect nitrogen hypoxia but would not allow him to do so outside of the 30-day opt-in period.[3]

---

[3] The complaint in the second § 1983 action further alleges that the State failed to take steps to prevent material deviations from its lethal-injection procedures in future executions, but Price abandoned that claim, as he did not argue it to the district court below, and it is not part of

## III.   Discussion

We review *de novo* an order on summary judgment.  *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017).  As for the district court's denial of Price's motion for stay of execution, we review that for abuse of discretion.  *Brooks v. Warden*, 810 F.3d 812, 818 (11th Cir. 2016).  With respect to the district court's factual findings, we review those for clear error.  *Glossip v. Gross*, 135 S. Ct. 2726, 2739 (2015).  Under this standard, we may not reverse "simply because we are convinced that we would have decided the case differently."  *Id.* (cleaned up).

Finally, we may grant Price's motion for stay of execution filed in this Court only if Price establishes that "(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; *and* (4) if issued, the injunction would not be adverse to the public interest."  *Arthur v. Comm'r, Ala. Dep't of Corr.,* 840 F.3d 1268, 1321 (11th Cir. 2016) (quoting *Brooks v. Warden*, 810 F.3d 812, 818 (11th Cir. 2016) (emphases in original)), *abrogated on other grounds by Bucklew v. Precythe*, No. 17-8151, 2019 WL 1428884, at *10 (U.S. Apr. 1, 2019).  The "first and most important question" regarding a stay of execution is whether the petitioner

---

the present appeal.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (claims or arguments not briefed before an appellate court are deemed abandoned and will not be addressed).

is substantially likely to succeed on the merits of his claims.  *Jones v. Comm'r. Ga. Dep't of Corr.*, 811 F.3d 1288, 1292 (11th Cir. 2016).

After careful consideration, we conclude that the district court did not err when it denied Price's Cross-Motion for Summary Judgment, although our basis for affirmance differs from the grounds set forth by the district court.  We further find that the district court did not abuse its discretion when it denied Price's initial and renewed motions for preliminary injunction in which he sought a stay of execution. Finally, we deny Price's motion for stay of execution because he has not satisfied the requirements for such a stay.

We now examine each of Price's claims in turn.

### A. Fourteenth Amendment Equal Protection Claim

Price contends that the State violated his Fourteenth Amendment right to equal protection by not permitting him to elect nitrogen hypoxia as a method of execution.  To prevail on his equal-protection claim, Price must first show that "the State will treat him disparately from other similarly situated persons."  *Arthur v. Thomas*, 674 F.3d 1257, 1262 (11th Cir. 2012) (quoting *DeYoung v. Owens*, 646 F.3d 1319, 1327 (11th Cir. 2011)).  Second, "[i]f a law treats individuals differently on the basis of . . . [a] suspect classification, or if the law impinges on a fundamental right, it is subject to strict scrutiny."  *Id.* (quoting *Leib v. Hillsborough Cty. Pub. Transp. Comm'n,* 558 F.3d 1301, 1306 (11th Cir. 2009)).  Otherwise, Price "must

8

show that the disparate treatment is not rationally related to a legitimate government interest." *Id.* (quoting *DeYoung,* 646 F.3d at 1327–28).

The district court did not err in denying Price's equal-protection claim. Importantly, Price has not demonstrated that he was or will be treated differently than similarly situated inmates. Although Price appeared to initially contend that the State made "secret agreements" with other death-row inmates—suggesting that these inmates elected to opt in to the nitrogen hypoxia protocol outside of the thirty-day window—he seems to now concede that these other inmates made their election within the thirty-day window.

The record reveals that Price had the same opportunity as every other inmate to elect nitrogen hypoxia as his method of execution. When the State added nitrogen hypoxia as a statutorily viable method of execution in June 2018, all inmates whose death sentences were final as of June 1, 2018, received a thirty-day period to elect nitrogen hypoxia. *See* Ala. Code § 15-18-82.1(b)(2). Significantly, Price was represented by counsel when the State added nitrogen hypoxia as a method of execution.

According to the State, all death-row inmates at Holman, including Price, were provided with a copy of an election form, and forty-eight of those inmates timely elected nitrogen hypoxia. Price did not. The record contains the affidavit of Captain Jeff Emberton, who attested to the fact that, in mid-June 2018, after the State

9

authorized nitrogen hypoxia as a method of execution, the warden of Holman directed him to provide every death-row inmate an election form and an envelope. According to Emberton, he delivered the form to every death-row inmate at Holman as instructed.  The form identified Act 2018-353 (which amended Ala. Code. § 15-18-82.1 to include nitrogen hypoxia) and allowed for the inmate to state that he was making the election of nitrogen hypoxia as the means of execution.[4]  Price did not contend that he did not receive the form or that he was not given the option to make the same election.

In sharp contrast to other inmates who opted for the protocol by the July 1, 2018, deadline, Price waited until late January 2019 to seek to elect nitrogen hypoxia for his execution.  Price appears to argue that the ADOC's provision of the election form was insufficient.  But Price was represented by counsel, so any doubts Price

---

[4] The form stated as follows:
ELECTION TO BE EXECUTED BY NITROGEN HYPOXIA
Pursuant to Act No. 2018-353, if I am to be executed, I elect that it be by nitrogen hypoxia rather than by lethal injection.
This election is not intended to affect the status of any challenge(s) (current or future) to my conviction(s) or sentence(s), nor waive my right to challenge the constitutionality of any protocol adopted for carrying out execution by nitrogen hypoxia.
Dated this _____ day of June, 2018.

_____          _____
Name/Inmate Number                                       Signature

ECF No. 19-2.  The State admits though that it did not create the election form.  Rather, it claims the Federal Public Defender's Office created the form and gave a copy of it to the warden of Holman.  But inmates not represented by the Federal Public Defender's Office were among those who timely completed the form.

had about the form could have been resolved by consulting with his attorney.  Plus,

several other inmates were able to make the timely election based on the provision

of the form by the State.  Price takes issue with the fact that most of the inmates that

timely elected nitrogen hypoxia were represented by the Federal Public Defender's

Office and that they were given an explanation of their rights by that office before

receiving the form.  But as we have noted, Price was also represented by counsel,

and he could have asked for an explanation of the form.  Nor does Price make any

Sixth Amendment claim, in any event.  Finally, the interactions between other

inmates and the Federal Public Defender's Office do not support any unequal

treatment by *the State* of similarly situated individuals.

Further, to the extent Price claims that he did not become aware of the change

in law until January 2019, he has not asserted that the State treated Price differently

than other death-row inmates with respect to this information.  Moreover, the record

here shows that Price and his counsel plainly had reason to know of the change in

Alabama's law before January 2019 because we specifically described that change

when we issued our decision in Price's first § 1983 action appeal.  *See Price*, 752 F.

App'x at 703 n.3.

Because Price did not timely elect the new protocol, he is not similarly situated

in all material respects to the inmates who did make such an election within the

thirty-day timeframe.  And because Price has not shown that he is similarly situated

to those inmates, he cannot demonstrate any equal-protection violation due to the State's denial of execution by nitrogen hypoxia. But even if Price were similarly situated to the other death-row inmates, he cannot establish an equal-protection violation because he was treated exactly the same as the other inmates. Every inmate was given thirty days within which to elect nitrogen hypoxia as their method of execution. Ironically, if the State *did* allow Price to make the belated election he seeks, it would be treating him differently than other death-row inmates who were not afforded the same benefit.

In the end, it appears that Price takes issue with the thirty-day election period itself, arguing that it is arbitrary. But even considering Price's claim as a challenge to the statute itself—that it treats similarly situated death-row inmates differently based on a criterion (a thirty-day election) that does not rationally further any legitimate state interest—the claim fails. As noted by the district court, a statute is presumed constitutional, and a classification not involving fundamental rights nor proceeding along suspect lines "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (citations omitted). Here, a rational basis exists for the thirty-day rule—the efficient and orderly use of state resources in planning and preparing for executions. And Price

has not negated this rational basis for the thirty-day election requirement.[5] *See id.*
(noting "[t]he burden is on the one attacking the legislative arrangement to negate
every conceivable basis which might support it").

## B. Eighth Amendment Claim

The Supreme Court's decision in *Glossip v. Gross*, 135 S. Ct. 2726, 2737
(2015), sets forth the relevant two-pronged standard a plaintiff must meet to succeed
on an Eighth Amendment method-of-execution claim.

Prisoners cannot succeed on a method-of-execution claim unless they can
establish that the method challenged presents a risk that is "'*sure or very likely* to
cause serious illness and needless suffering,' and gives rise to 'sufficiently *imminent*
dangers.'" *Id.* (emphasis in original) (quoting *Baze*, 553 U.S. at 50 (plurality
opinion) (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 34-35 (1993)).   The
Supreme Court further elaborated in *Baze*, "Simply because an execution method
may result in pain, either by accident or as an inescapable consequence of death,
does not establish the sort of 'objectively intolerable risk of harm' that qualifies as
cruel and unusual" punishment prohibited by the Eighth Amendment.   *Baze*, 553

---

[5] On appeal, Price claims that the district court committed error in refusing to apply strict
scrutiny to the State's alleged differential treatment of him.  He argues that once the district court
concluded he was substantially likely to prevail on his allegation that the State's lethal-injection
protocol will cause him severe pain and needless suffering, it should have applied strict scrutiny
to his equal-protection claim, since the right to be free from cruel and unusual punishment is a
fundamental right.  We do not evaluate this argument of Price's, as we conclude that binding
precedent requires us to find on this record that Price is not substantially likely to prevail on his
allegation that the State's lethal-injection protocol will cause him severe pain.

U.S. at 50.   So to prevail on a method-of-execution claim, an inmate must show a "'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Glossip*, 135 S.Ct. at 2737 (quoting *Baze*, 553 U.S. at 50 (plurality opinion) (quoting *Farmer v. Brennan*, 511 U.S. 825, 846, and n. 9 (1994)).

The inmate must also "identify an alternative that is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'" *Id.* (quoting *Baze*, 553 U.S. at 52).  Where a prisoner claims a safer alternative to the State's lethal-injection protocol, he cannot make a successful challenge by showing a "slightly or marginally safer alternative."   *Id.* (quoting *Baze,* 553 U.S. at 51). Death-row inmates face a heavy burden.

The Supreme Court recently reiterated an inmate's burden in an Eighth Amendment method-of-execution challenge in *Bucklew v. Precythe*, No. 17-8151, 2019 WL 1428884, at *8 (U.S. Apr. 1, 2019).  As summarized by the Court, a prisoner "must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason."  *Id.*

In reaffirming this standard, however, the Supreme Court recognized the burden an inmate has under the *Baze-Glossip* test can be "overstated."  *Id.* at *10.  It

clarified that "[a]n inmate seeking to identify an alternative method of execution is not limited to choosing among those presently authorized by a particular State's law." *Id.* So a petitioner can identify a "well-established protocol in another State as a potentially viable option." *Id.* Justice Kavanaugh noted that all nine Justices agreed on this point. *Id.* at *16 (Kavanaugh, J., concurring) (citing *Arthur v. Dunn*, 580 U.S. __, 137 S. Ct. 725, 733-34 (2017) (Sotomayor, J. dissenting from denial of certiorari)).

For this reason, a portion of our decision in *Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268 (11th Cir. 2016), has been abrogated by *Bucklew*. In particular, in *Arthur*, we determined that a proposed method of execution (death by firing squad) was not an available alternative because the state in which the inmate would be executed did not authorize it. *Id.* at 1317-18. We made this determination despite the fact that another state authorized the particular method of execution proposed by the inmate. *Id.* But *Bucklew* demonstrates our conclusion in *Arthur* was incorrect. Having clarified the applicable law, we turn to the *Baze-Glossip* test in reverse order, tackling the availability issue first.

### 1. Price has shown that nitrogen hypoxia is an available alternative method of execution that is feasible and readily implemented

Price claims that nitrogen hypoxia is an available method of execution for him because the Alabama legislature has authorized it. In proposing nitrogen hypoxia as an alternative to the State's midazolam lethal-injection protocol, Price emphasizes

that he is merely seeking to be executed by a method of execution that the Alabama legislature, "after considerable thought, has expressly authorized." He also argues that nitrogen hypoxia is feasible and readily implemented because pure nitrogen gas is easily purchased. No supply concerns exist for nitrogen, and counsel for Price notes that he was recently able to easily purchase a tank of 99.9% pure compressed nitrogen gas.

The State retorts that nitrogen hypoxia is not an available method of execution to Price as a matter of state law because he failed to make a timely election under the applicable statute. It also claims nitrogen hypoxia is neither feasible nor readily implemented at this date, since the ADOC has not yet finalized a nitrogen hypoxia protocol, and it is not likely that one will be in place by April 11, 2019. Finally, the State asserts Price did not meet his burden to prove a known and available alternative method of execution because he did not provide sufficient details of how the State could induce nitrogen hypoxia.

To resolve this issue, we turn to *Bucklew* for guidance. *Bucklew* sheds some light on the "availability" prong of the *Baze-Glossip* test, and it specifically addresses an inmate's proposal of nitrogen hypoxia as an alternative method of execution.

In *Bucklew*, the Supreme Court determined that the inmate had not presented a triable question on the viability of nitrogen hypoxia as an alternative to lethal

16

injection for two reasons.  First, the Court noted, to establish that a proposed alternative method is available, an inmate must do more than show that it is theoretically "feasible"; he must also show that it is "readily implemented." *Bucklew*, 2019 WL 1428884, at \*11 (citing *Glossip*, 135 S. Ct. at 2737-38).  To meet this burden, the inmate's proposed alternative must be "sufficiently detailed to permit a finding that the State could carry it out 'relatively easily and reasonably quickly.'"  *Id.* (quoting *McGehee v. Hutchinson*, 854 F.3d 488, 493 (8th Cir. 2017); *Arthur*, 840 F.3d at 1300).

The Court in *Bucklew* found that the inmate had failed to meet this burden because he presented no evidence on details such as how nitrogen gas would be administered, in what concentration, and for how long the gas would be administered.  *Id.*  The inmate also did not suggest how the State could ensure the safety of the execution team.  *Id.*  Instead, the inmate pointed only to reports from correctional institutions in other states revealing that additional study was needed to put in place a protocol for execution by nitrogen hypoxia.  *Id.*

Second, the Court in *Bucklew* determined that the State had a legitimate reason for not switching its current lethal-injection protocol:  nitrogen hypoxia was an "entirely new method—one that had 'never been used to carry out an execution' and had 'no track record of successful use.'"  *Id.* (quoting *McGehee*, 854 F.3d at 493).  The Court concluded by stating that the Eighth Amendment "does not compel a State

to adopt 'untried and untested' (and thus unusual in the constitutional sense) methods of execution." *Id.* (quoting *Baze*, 553 U.S. at 41).[6]

Here, the State argues that although the Code of Alabama now contemplates nitrogen hypoxia as a means of execution, it is not "available" because the ADOC is still developing a protocol, and the process will not be complete in time for Price's April 11, 2019, execution.  We are not persuaded.  If a State adopts a particular method of execution—as the State of Alabama did in March 2018—it thereby concedes that the method of execution is available to its inmates.  Unlike in *Bucklew*, where the inmate proposed the adoption of a new method, here, the State of Alabama chose, on its own, and after careful consideration, to offer nitrogen hypoxia as a method of execution for its death-row inmates.  So unlike the inmate in *Bucklew*, Price is not attempting to "compel" the State to adopt a different and new method of execution at all.  The method was already adopted well before Price's Eighth Amendment challenge—and more than a year before Price's scheduled execution date.

A State may not simultaneously offer a particular method of execution and deny it as "unavailable."  Rather, because the State voluntarily included nitrogen

---

[6] The Supreme Court did note, however, while the case was pending, a "few" states had authorized nitrogen hypoxia as a method of execution. *Bucklew*, 2019 WL 1428884, at *11 n.1. But, it emphasized, "[t]o date, no one in this case has pointed us to an execution in this country using nitrogen gas." *Id.*

hypoxia in its statute, we reject the State's argument that nitrogen hypoxia is not "available" to Price simply because the State has not yet developed a protocol to administer this method of execution.  If we were to find otherwise, it would lead to an absurd result.  States could adopt a method of execution, take no action at all to implement a protocol to effectuate it, and then defeat an inmate's Eighth Amendment challenge by simply claiming the method is not "available" due to a lack of protocol.

Roughly two years ago, the Alabama legislature introduced a bill that would make nitrogen hypoxia a statutorily authorized method of execution in Alabama. The bill was also passed and enacted into law more than a year ago, and inmates have been electing nitrogen hypoxia since June 2018.  Under these circumstances, we cannot agree that nitrogen hypoxia is not available in the State of Alabama. Indeed, Alabama's official legislature-enacted policy is that nitrogen hypoxia is an available method of execution in the State.

We also reject the State's suggestion that nitrogen hypoxia is not available to Price only because he missed the 30-day election period.  If nitrogen hypoxia is otherwise "available" to inmates under *Bucklew*, that the State chooses to offer the chance to opt for it for a period of only 30 days does not somehow render it "unavailable" by *Bucklew*'s criteria.  To the contrary, for the same reason that *Bucklew* abrogates *Arthur*'s requirement that a state offer a method of execution for

19

it to be "available," *Bucklew* renders a state's time limit on a given execution option of no moment to whether that option is "available."

The closer question is whether Price's alleged lack of detail with respect to *how* the State would implement his execution by nitrogen hypoxia defeats his Eighth Amendment claim.  We agree that Price did not come forward with sufficient detail about how the State could implement nitrogen hypoxia to satisfy *Bucklew*'s requirement where the inmate proposes a new method of execution.  But under the particular circumstances here—where the State by law previously adopted nitrogen hypoxia as an official method of execution—we do not believe that was Price's burden to bear.  Rather, an inmate may satisfy his burden to demonstrate that the method of execution is feasible and readily implemented by pointing to the executing state's official adoption of that method of execution.

True, in *Bucklew*, the Supreme Court discussed how Bucklew had failed to set forth evidence of essential questions like how the nitrogen gas would be administered, and it used this as a basis to defeat the Eighth Amendment claim.  But as we have noted, a key distinction between *Bucklew* and our case is present.  Again, in *Bucklew*, the *inmate* was *proposing* a new alternative method of execution that had not yet been approved by the state.  And in addressing whether the suggested alternative method was "feasible" and "readily implemented," the Supreme Court

explained that the *inmate's proposal* must be sufficiently detailed. *Bucklew*, 2019 WL 1428884, at *11.

Here, Price did not "propose" a new method of execution; he pointed to one that the State already made available. The State, on its own, had already adopted nitrogen hypoxia as an alternative to lethal injection. Under these circumstances, the State bears the responsibility to formulate a protocol detailing how to effectuate execution by nitrogen hypoxia. Indeed, it would be bizarre to put the onus on Price to come up with a proposed protocol for the State to use when the State has already adopted the particular method of execution and is required to develop a protocol for it, anyway. For these reasons, we conclude that Price's lack of detail as to how the State would implement death by nitrogen hypoxia does not prevent him from establishing that this method of execution is available to him.

Finally, we acknowledge the potential for abuse in delaying execution that a state's decision to make multiple methods of execution available could present. Under *Bucklew*, 2019 WL 1428884, at *14 (citation and quotation marks omitted), "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a sentence." So to the extent that a particular available method of death reasonably requires a certain period for the state to prepare for execution, a prisoner may not successfully seek execution by an alternative method inside that window of time. But this is not that case.

21

Here, Price sought execution by nitrogen hypoxia in January 2019, and his execution is not scheduled to occur until April 11, 2019. While the State has not yet developed a protocol for execution by nitrogen hypoxia, it has submitted no evidence to suggest that once it has satisfied its burden to develop its execution-by-nitrogen-hypoxia protocol, preparing to carry out execution by nitrogen hypoxia will reasonably require more than two-and-one-half months.

**2.    Price has not established a substantial likelihood that he would be able to show that nitrogen hypoxia significantly reduces a substantial risk of pain when compared to the three-drug protocol**

Nevertheless, Price cannot succeed on his Eighth Amendment challenge because he has not shown that nitrogen hypoxia will "significantly reduce a substantial risk of severe pain." *Bucklew*, 2019 WL 1428884, at *12. As the Supreme Court in *Bucklew* recently indicated, a minor reduction in risk is not enough; "the difference must be clear and considerable." *Id.* at *12. Here, Price has failed to meet that standard.

As an initial matter, we reject Price's contention that, by not moving for summary judgment on this issue, the State has somehow conceded that a genuine issue of material fact exists with respect to whether its lethal-injection protocol carries a substantial risk of causing severe pain. At this stage, where Price seeks a stay of execution, he bears the burden to show that a substantial likelihood of success on the merits exists. And, during the hearing before the district court, the State

contended that its three-drug lethal-injection protocol using midazolam was a safe and effective constitutional method of execution.

In the district court, Price pointed to two things to support his motion: (1) the declaration of his expert Dr. David Lubarsky, which he also presented during his appeal on the first § 1983 action; and (2) a decision by a district court in the Southern District of Ohio—*In re Ohio Execution Protocol Litigation*, No. 11-cv-1016, 2019 WL 244488, at *70 (S.D. Ohio Jan. 14, 2019). Dr. Lubarsky's declaration contains his opinion that midazolam will not provide adequate analgesic effects during Price's execution. And Price relies on the Southern District of Ohio's opinion because the court there found Ohio's lethal injection protocol—which uses midazolam—"will certainly or very likely cause [an inmate] severe pain and needless suffering."

The State submitted nothing on the record in response to contest Dr. Lubarsky's assertions. Rather, it relied on the evidence it submitted in Price's first § 1983 action. But the district court never reached this question in the first § 1983 action, and the State failed to file its evidence on this issue in the pending matter. As a result, the record contains only Dr. Lubarsky's uncontested assertions that the State's use of midazolam in the three-drug protocol presents a substantial risk of severe pain to Price. So the district court's conclusion that Price satisfied his burden

to establish that lethal injection carries a substantial risk of severe pain cannot be clearly erroneous, since the only evidence of record supports that conclusion.

Nevertheless, the district court did clearly err in concluding that Price had met his burden to show that execution by nitrogen hypoxia presented an alternative that would significantly reduce the risk of substantial pain to Price. The district court based its finding in this regard on Dr. Lubarsky's declaration in the first § 1983 action appeal and on a report from East Central University. But Dr. Lubarsky's declaration did not compare the effectiveness of the current three-drug protocol to the proposed use of nitrogen hypoxia.[7]

And Price's reliance on the East Central University report entitled "Nitrogen Induced Hypoxia as a Form of Capital Punishment," in which the authors studied nitrogen hypoxia, is also problematic. Importantly, the report is a preliminary draft report that is stamped with the words "Do Not Cite." So we cannot conclude that Price's reliance on this report alone could satisfy his burden to show that execution by nitrogen hypoxia would significantly reduce the risk of substantial pain to Price. And in the absence of the East Central University report, the district court was left without any evidence supporting a conclusion that nitrogen is not likely to result in any substantial physical discomfort during executions. Consequently, we find that

---

[7] The district court likewise recognized that Dr. Lubarsky offered no opinion regarding the comparison between the pain incurred with the lethal-injection protocol and that incurred with the administration of nitrogen hypoxia.

the district court clearly erred when it found that Price satisfied his burden to establish that nitrogen would likely not result in substantial physical discomfort to Price. The district court simply had no reliable evidence upon which to make this determination.

We further note that the report itself also did not compare the two methods of execution, and to the extent Price claims he would feel like he was suffocating if executed by lethal injection, the petitioner in *Bucklew* admitted that feelings of suffocation could also occur with nitrogen gas. *Bucklew*, 2019 WL 1428884, at *13. Likewise, the record in *Bucklew* supported the conclusion that the petitioner could be capable of feeling pain for 20 to 30 seconds when nitrogen is used for an execution. *Id.* The Court also recognized expert testimony that suggested the effects of nitrogen could vary depending on how it was administered. *Id*. In short, the district court clearly erred when it concluded Price had satisfied his burden to establish that nitrogen hypoxia would significantly reduce a substantial risk of severe pain. For these reasons, Price has failed to show a substantial likelihood of success on the merits of his claim.

## IV.    Conclusion

For the foregoing reasons, we affirm the district court's denial of Price's Cross-Motion for Summary Judgment as well as its denial of Price's original and renewed motions for preliminary injunction. And because Price has not satisfied his

burden to show a substantial likelihood of success on the merits with respect to either his Fourteenth Amendment equal-protection claim or his Eighth Amendment method-of-execution claim, we deny his emergency motion to stay his execution.

**AFFIRMED and MOTION FOR STAY DENIED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 10, 2019

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  19-11268-P
Case Style:  Christopher Lee Price v. Commissioner, Alabama DOC, et al
District Court Docket No:  1:19-cv-00057-KD-MU

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call David L. Thomas at (404) 335-6171.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: David L. Thomas
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion

There is a typo on page 10 of the opinion.  "Homan," which appears on the sixth line of that page, should be "Holman."