IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER LEE PRICE,      ) | |
|     Plaintiff,      ) | |
| ) | |
| v.      ) | CIVIL ACTION: 1:19-00057-KD-MU |
| ) | |
| JEFFERSON S. DUNN, *et al.*,      ) | |
|     Defendants.      ) | |

**ORDER**

This matter is before the Court on "Plaintiff's Emergency Motion for a Preliminary Injunction, or in the Alternative, Relief under Fed.R.Civ.P. 60(b)(6)" (Doc. 45); and the Defendants' Response (Doc 47). Price is a death row inmate scheduled for execution on April 11, 2019 at 6:00 p.m. C.S.T. at the Holman Correctional Facility.

**I.      Background**

On April 5, 2019, the Court denied Price's cross-motion for summary judgment and emergency motion for preliminary injunction/stay of execution. (Doc. 32). That same day, Price filed a Fed.R.Civ.P. Rule 60(b)(6) motion to reconsider and renewed emergency motion for preliminary injunction/entry of a stay of execution. (Doc. 33, 34). On April 6, 2019, the Court denied Price's motion (Doc. 35), and later that day Price appealed the ruling to the Eleventh Circuit. (Docs. 36, 37). On April 10, 2019, the Eleventh Circuit issued its Judgment/Order, affirming this Court's ruling. (Doc. 44).[1] The Eleventh Circuit held as follows:

---

[1] Per the Eleventh Circuit's opinion, the mandate will issue at a later date. *Edwards v. United States*, 733 Fed. Appx. 526, 526 (11th Cir. 2018), *cert. den.,* 139 S.Ct. 1216 (2019) (The mandate in *Beeman* has not yet issued, but it is still the law of this circuit. *See Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992) (per curiam); 11th Cir. R. 36 I.O.P. 2 ("Under

1

> …After careful consideration, we affirm the district court's denial of Price's Cross-Motion for Summary Judgment as well as its denial of Price's original and renewed motions for preliminary injunction. We also deny Price's motion for a stay of execution because he cannot show a substantial likelihood of success on his petition.
>
> ***
>
> …After careful consideration, we conclude that the district court did not err when it denied Price's Cross-Motion for Summary Judgment, although our basis for affirmance differs from the grounds set forth by the district court. We further find that the district court did not abuse its discretion when it denied Price's initial and renewed motions for preliminary injunction in which he sought a stay of execution. Finally, we deny Price's motion for stay of execution because he has not satisfied the requirements for such a stay…

(Id. at 2, 8).

On April 10, 2019, Price filed the present emergency motion. Price contends as follows:

> The Eleventh Circuit confirmed yesterday that, based on the district court record as of April 6th, Mr. Price had demonstrated a substantial likelihood of showing that nitrogen hypoxia is an "available" method of execution that the State could use relatively easily and reasonably quickly on Mr. Price as an alternative to the midazolam lethal injection protocol that will cause him severe pain and needless suffering. *Price v. Commissioner*, No. 19-11268 (11th Cir. Apr. 10, 2019), slip op. at 15. In nevertheless holding that Mr. Price had not shown an entitlement to a preliminary injunction staying his execution by lethal injection, the Eleventh Circuit held that the evidentiary record was insufficient on a single discrete factual issue—whether execution by nitrogen hypoxia would be essentially painless for Mr. Price. *Id*. at 22-25. Specifically, the Eleventh Circuit held that the East Central University report that Mr. Price had submitted—a report in which the authors concluded that nitrogen hypoxia causes brief euphoria and rapid loss of consciousness, but not any significant pain—was not sufficiently reliable because it was a preliminary draft "stamped with the words 'Do Not Cite.'" *Id*. at 24.
>
> Mr. Price can easily fill the evidentiary gap that the Eleventh Circuit flagged. He therefore respectfully submits this new motion, once again seeking a preliminary injunction or, in the alternative, relief under Fed. R. Civ. P. 60(b)(6). This motion is accompanied by the evidence that the Eleventh Circuit believed to be lacking. Mr. Price requests that the Court act on this motion before his execution today at 6:00PM CDT.
>
> In support this motion, Mr. Price hereby incorporates the evidence and prior memoranda of law he submitted in support of his prior motions for a preliminary injunction, and

---

the law of this circuit, published opinions are binding precedent. The issuance or non-issuance of the mandate does not affect this result.").)

> supplements the evidentiary record with the following new evidence: (1) a final version of the East Central University Report, which concludes that "[t]here is no evidence to indicate any substantial physical discomfort during" execution by nitrogen hypoxia, see Affidavit of Aaron M. Katz, Exhibit A; (2) the affidavit of Professor Christine Pappas, one of the authors of the East Central University Report, see id., Exhibit B; (3) the affidavit of Dr. Joel B. Zivot, Associate Professor of Anesthesiology and Surgery at Emory University School of Medicine, see Exhibit C; and (4) the affidavit of Dr. Mark J. S. Heath, Assistant Professor of Clinical Anesthesiology at Columbia University Medical Center, see Exhibit D. These items of evidence clearly demonstrate what the State did not contest in the district court or on appeal, which is that an execution carried out through appropriately implemented nitrogen hypoxia will not cause Mr. Price any significant physical pain.

(Doc. 45 at 1-2).

## II.   **Jurisdiction**

While the Eleventh Circuit has issued its ruling, affirming this Court's decision on appeal, it has yet to issue the mandate. However, as Price has presented a new motion for preliminary injunction accompanied by new evidence, the court may proceed. *Piambino v. Bailey,* 757 F.2d 1112, 1119–20 (11th Cir. 1985) (Although the trial court is free to address, as a matter of first impression, those issues not disposed of on appeal,. . . it is bound to follow the appellate court's holdings, both expressed and implied.).

The State argues that the Court does not have jurisdiction because Price has filed a writ of certiorari in the U.S. Supreme Court. However, the "mere filing of a petition for certiorari with the Supreme Court neither stops the mandate from issuing nor stops the case from proceeding in the district court. A litigant desiring such cessation must seek and obtain a stay." United States v. Sears, 411 F.3d 1240, 1242 (11th Cir. 2005).

3

### III.  Rule 60(b)(1) and Rule 60(b)(6)

Price relies on Rule 60(b)(1) and Rule 60(b)(6) for purposes of the present motion to argue that this Court can amend its April 5, 2019 order denying his injunctive request, on the basis of new evidence he has now submitted.  Rule 60(b) provides, in relevant part, that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect;….or (6) any other reason that justifies relief."  Fed.R.Civ.P. Rule 60(b).  For Rule 60(b)(1), as explained in United States v. Real Property Known as 6556 Skyline Dr., Delray Beach, FL, 33446, 2016 WL 320089, *2 (S.D. Fla. Jan. 27, 2016):

> To establish mistake, inadvertence, or excusable neglect, a defaulting party must show that: (1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint. *See Branch Banking & Trust v. Maxwell,* 512 F. App'x 1010…(11th Cir. 2013); *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003)…..Further, under Rule 60(b), the desirability for order and predictability in the judicial process speaks for caution in the reopening of judgments. *See Griffin v. SwimTech Corp.,* 722 F.2d 677, 679-80 (11th Cir. 1984).

Rule 60(b)(6) is the "catch-all" provision, providing for relief from and order or judgment for "any other reason that justifies relief."  To satisfy Rule 60(b)(6) Price "must demonstrate 'that the circumstances are sufficiently extraordinary to warrant relief. Even then, whether to grant the requested relief is...a matter for the district court's sound discretion.'" Grant v. Pottinger-Gibson, 2018 WL 834895, *3 (11th Cir. Feb. 13, 2018) (quoting Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1317 (11th Cir. 2000) (omission in original) (internal quotation marks omitted)).  The party seeking such remedy beards the burden of showing that absent such relief, extreme and

4

unexpected hardship will result. Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984) (citation omitted).  "That a grant of a Rule 60(b)(6) motion 'might have been permissible or warranted' is not enough: instead, the denial of the motion 'must have been sufficiently unwarranted as to amount to an abuse of discretion.' ... In other words, a party seeking relief bears a heavy burden of demonstrating 'a justification so compelling that the district court was required to vacate its order.'…"  Earley v. Liberty Life Assur. Co. of Boston, 671 Fed. Appx. 1037, 1038 (11th Cir. 2016) (citations omitted).  In sum, "relief under Rule 60(b)(6) 'is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances.'" Hisey v. Qualtek USA, LLC, 753 Fed. Appx. 698, 702 (11th Cir. 2018).

However, Rule 60(b)(1) and Rule 60(b)(6) "are mutually exclusive" meaning that "[a] court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1)." Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc., 803 F.2d 1130, 1133 (11th Cir. 1986).  Price's motion "offers no separate reasons of note for relief under Rule 60(b)(6) that…[he] does not offer for Rule 60(b)(1). This lack of distinction is fatal to the…claim under Rule 60(b)(6)." United States v. Real Property Known as 6556 Skyline Dr., Delray Beach, FL, 33446, 2016 WL 320089, *2 (S.D. Fla. Jan. 27, 2016).

With regard to Rule 60(b)(1), Price contends that he is entitled to such relief "because his filing of the draft version of the [East Central University] report rather than the final version qualifies as a mistake [by counsel][]" -- i.e., not a mistakes of this Court.  (Doc. 45 at 4).  However, "[m]any courts in fact consider it an abuse of discretion to set aside an order on the basis of attorney neglect. *See, e.g., Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir.1990) (if failure of party to present evidence is attributable to carelessness or

5

negligence of attorney, it would be an abuse of discretion for the district court to grant Rule 60(b) relief)….))." In re Watford, 192 B.R. 276, 281 (M.D. Ga. Bank. 1996).  The Court finds that Price has not satisfied Rule 60(b)(1).

## IV. Emergency Motion for Preliminary Injunction to Stay Execution

"Injunctive relief, including a stay of execution, is an equitable remedy that is not available as a matter of right. *Brooks v. Warden*, 810 F.3d 812, 824…(11th Cir. Jan. 19, 2016)…As the Supreme Court has recognized, 'equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts.' *Hill*, 547 U.S. at 584…" Jones v. Commissioner, Ga. Dept. of Corr., 812 F.3d 923, 932 (11th Cir. 2016).  Indeed, "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." Am. Civil Liberties Union of Fla., Inc. v. Miami–Dade Cty. Sch. Bd., 557 F.3d 1177, 1198 (11th Cir. 2009).  "[I]ts grant is the exception rather than the rule[.]" Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000).

Recently, concerning motions to stay executions, the Supreme Court held:

… The proper role of courts is to ensure that method-of-execution challenges to lawfully issued sentences are resolved fairly and expeditiously. Courts should police carefully against attempts to use such challenges as tools to interpose unjustified delay. Last-minute stays should be the extreme exception, not the norm, and "the last-minute nature of an application" that "could have been brought" earlier, or "an applicant's attempt at manipulation," "may be grounds for denial of a stay." *Hill*, 547 U.S., at 584 (internal quotation marks omitted)….

Buckley v. Precythe, __S.Ct.__, 2019 WL 1428884, *14 (Apr. 1, 2019).  And as explained in Thomas v. Dunn, 2015 WL 4635436, *1 (M.D. Ala. Aug. 3, 2015):

6

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court...." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir.2002). This court may grant a preliminary injunction only if Thomas demonstrates each of the following prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunction may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest. Palmer, 287 F.3d at 1329; *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 *Cate v. Oldham*, 707 F.2d 1176 (11th Cir.1983); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352 (11th Cir.1983). "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion' " as to the four requisites." *McDonald's*, 147 F.3d at 1306; *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, In*c., 887 F.2d 1535, 1537 (11th Cir.1989) (a preliminary injunction is issued only when "drastic relief" is necessary); *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir.1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion). The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the party's ability to establish any of the other elements. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir.1994); *see also Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir.2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"). "'The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.' *Northeastern Fl. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fl.,* 896 F.2d 1283, 1284 (11th Cir.1990)." *Suntrust Bank v. Houghton Mifflin Co.,* 268 F.3d 1257, 1265 (11th Cir.2001).

Thus, "[i]t is by now hornbook law that a court may grant a stay of execution *only* if the moving party establishes that: '(1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest.' *Powell v. Thomas*, 641 F.3d 1255, 1257 (11th Cir. 2011) (emphasis added))." Brooks, 810 F.3d at 818.

*However*, where the plaintiff is a death row inmate who has brought a constitutional challenge to his execution, the plaintiff's entitlement to a preliminary injunction staying his

execution "turns on whether [he can]….establish a likelihood of success on the merits." Glossip, 135 S.Ct. at 2737. Specifically:

> …capital prisoners seeking a stay of execution must show "a likelihood that they can establish both that [the state's] lethal injection protocol creates a demonstrated risk of severe pain and that the risk is substantial when compared to the known and available alternatives." *Id.; see also id.* ("A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner...show[s] that the risk is substantial when compared to the known and available alternatives." (quotation omitted and emphasis added))….

Brooks, 810 F.3d at 819 (citing Baze, 553 U.S. at 61). Even so, "[a] stay of execution does not require an inmate to prove his case once and for all. But the standards require more than the mere existence of an evidentiary toss-up. A district court must make some findings that tilt the scales in the inmate's favor." Hamm v. Commissioner Ala. Dep't of Corr., 2018 WL 2171185, *4 (11th Cir. Feb. 13, 2018).

V.   **Discussion**

   **A) Substantial likelihood of success on the merits**

While there are four (4) factors tied to preliminary injunctive relief, where the plaintiff is a death row inmate who has brought a constitutional challenge to his execution, the plaintiff's entitlement to a preliminary injunction staying his execution "turns on whether [he can] establish a likelihood of success on the merits." Glossip v. Gross, 135 S. Ct. 2726, 2737 (2015). The substance of the Court's analysis thus turns on whether, based on the current record, Price is substantially likely to prevail on his Eighth Amendment claim.

**First**, the Court finds -- in light of the Eleventh Circuit's Judgment/Order -- that the alternative execution method of nitrogen hypoxia is "available" to Price, and is "readily

8

implemented," as a matter of law.[2]  As to availability, the Eleventh Circuit stated as follows:

> …Here, the State argues that although the Code of Alabama now contemplates nitrogen hypoxia as a means of execution, it is not "available" because the ADOC is still developing a protocol, and the process will not be complete in time for Price's April 11, 2019, execution. We are not persuaded….
>
> ***
>
> …A State may not simultaneously offer a particular method of execution and deny it as "unavailable." Rather, because the State voluntarily included nitrogen hypoxia in its statute, we reject the State's argument that nitrogen hypoxia is not "available" to Price simply because the State has not yet developed a protocol to administer this method of execution. If we were to find otherwise, it would lead to an absurd result. States could adopt a method of execution, take no action at all to implement a protocol to effectuate it, and then defeat an inmate's Eighth Amendment challenge by simply claiming the method is not "available" due to a lack of protocol.
>
> ***
>
> We also reject the State's suggestion that nitrogen hypoxia is not available to Price only because he missed the 30-day election period. If nitrogen hypoxia is otherwise "available" to inmates under *Bucklew*, that the State chooses to offer the chance to opt for it for a period of only 30 days does not somehow render it "unavailable" by *Bucklew's* criteria. To the contrary, for the same reason that *Bucklew* abrogates Arthur's requirement that a state offer a method of execution for it to be "available," *Bucklew* renders a state's time limit on a given execution option of no moment to whether that option is "available."…

(Doc. 44 at 18-20).  For the reasons stated by the Eleventh Circuit, the nitrogen hypoxia execution method is "available" to Price.

As to whether nitrogen hypoxia as an execution method is able to be "readily implemented," the Eleventh Circuit stated as follows:

> ….We agree that Price did not come forward with sufficient detail about how the State could implement nitrogen hypoxia to satisfy *Bucklew's* requirement where the inmate proposes a new method of execution. But under the particular circumstances here—where the State by law previously adopted nitrogen hypoxia as an official method of execution—we do not believe that was Price's burden to bear. Rather, an inmate may satisfy his burden to demonstrate that the method of execution is feasible and readily implemented by pointing to the executing state's official adoption of that method of

---

[2] The undersigned previously found that the State could not readily implement execution by nitrogen hypoxia.

> execution….
>
> ***
>
> …Here, Price did not "propose" a new method of execution; he pointed to one that the State already made available. The State, on its own, had already adopted nitrogen hypoxia as an alternative to lethal injection. Under these circumstances, the State bears the responsibility to formulate a protocol detailing how to effectuate execution by nitrogen hypoxia…..

(Doc. 44 at 20-21). Thus, according to the Eleventh Circuit, Price's reliance on nitrogen hypoxia as a method of execution -- "by pointing to" Alabama's official adoption of that method (the statute) demonstrates that the method is "feasible and readily implemented."

**Second**, the Court addresses: 1) whether the current method of execution set for Price -- the three (3) drug midazolam based lethal injection protocol -- will, or is likely, to cause a substantial risk of severe pain; and 2) whether Price has now shown that the nitrogen hypoxia execution method will significantly reduce that risk.

As stated by the Eleventh Circuit:

> Price cannot succeed on his Eighth Amendment challenge because he has not shown that nitrogen hypoxia will "significantly reduce a substantial risk of severe pain."
>
> ***
>
> …the record contains only Dr. Lubarsky's uncontested assertions that the State's use of midazolam in the three-drug protocol presents a substantial risk of severe pain to Price. So the district court's conclusion that Price satisfied his burden to establish that lethal injection carries a substantial risk of severe pain cannot be clearly erroneous, since the only evidence of record supports that conclusion.[3]
>
> Nevertheless, the district court did clearly err in concluding that Price had met his burden to show that execution by nitrogen hypoxia presented an alternative that would significantly reduce the risk of substantial pain to Price…. But Dr. Lubarsky's declaration

---

[3] In footnote 5 of the opinion, the Eleventh Circuit states that "on this record that Price is not substantially likely to prevail on his allegation that the State's lethal-injection protocol will cause him severe pain." (Doc. 44 at 13 at note 5). This appears to be in conflict with the finding in the body of the Court's opinion. The Court follows the finding in the body of the opinion as the finding of the Court on the issue.

> did not compare the effectiveness of the current three-drug protocol to the proposed use of nitrogen hypoxia [ ]…
>
> And Price's reliance on the East Central University report…is also problematic. Importantly, the report is a preliminary draft report that is stamped with the words "Do Not Cite." So we cannot conclude that Price's reliance on this report alone could satisfy his burden to show that execution by nitrogen hypoxia would significantly reduce the risk of substantial pain to Price. And in the absence of the East Central University report, the district court was left without any evidence supporting a conclusion that nitrogen is not likely to result in any substantial physical discomfort during executions…..the district court clearly erred when it found that Price satisfied his burden to establish that nitrogen would likely not result in substantial physical discomfort to Price. The district court simply had no reliable evidence upon which to make this determination.
>
> We further note that the report itself also did not compare the two methods of execution…

(Doc. 40 at 22-25 (footnote omitted)).

As noted with regard to a significant reduction of this risk, as detailed by the Eleventh Circuit, Price previously failed to demonstrate that the nitrogen hypoxia execution method will significantly reduce his pain because he failed to submit "reliable evidence."  Price previously submitted an academic study from East Central University entitled <u>Nitrogen Induced Hypoxia as a Form of Capital Punishment</u>, wherein the authors conclude that "[t]here is no evidence to indicate any substantial physical discomfort during" execution by nitrogen hypoxia.  (Doc. 29-2 at 23).[4]  The study concluded that: 1) execution via nitrogen hypoxia would be a humane method to carry out a death sentence; 2) such protocol would not require the assistance of licensed medical professionals; 3) such protocol would be simple to administer; 4) nitrogen is readily available for purchase and sourcing would not pose a difficulty; and 5) such protocol would not

---

[4] Price notes that Oklahoma relied on this study in approving nitrogen hypoxia as an execution method.

depend upon the cooperation of the offender being executed.  Id.

In the current motion, Price submits the following new evidence: 1) a final version of the East Central University Report (Doc. 45-2); 2) the affidavit of Professor Christine Pappas, one of the authors of the East Central University Report (Doc. 45-3); 3) the affidavit of Dr. Joel B. Zivot, Associate Professor of Anesthesiology and Surgery at Emory University School of Medicine (Doc. 45-5); and 4) the affidavit of Dr. Mark J. S. Heath, Assistant Professor of Clinical Anesthesiology at Columbia University Medical Center (Doc. 45-4).

According to Price, this new evidence shows that execution via nitrogen hypoxia will result in a significant reduction of a risk of severe pain to him.  Specifically, the University Report concludes: "[t]here is no evidence to indicate any substantial physical discomfort during" execution by nitrogen hypoxia.  Likewise, per Professor Pappas, "[h]aving studied nitrogen hypoxia as a method of execution, and having reviewed Dr. Lubarsky's declaration, it is my opinion that nitrogen hypoxia would be a significantly less painful method of execution than midazolam-based lethal injection." Additionally, per Associate Professor Heath, "[i]t is my professional opinion, based on my research and medical knowledge, that the delivery of an anoxic preparation of nitrogen gas is both reliably fatal and reliably devoid of any form of pain or physical suffering."  Moreover, per Dr. Zivot: "It is my professional opinion, based on my medical knowledge, that if nitrogen gas is delivered to an individual, the occurrence of euphoria prior to a loss of consciousness in that individual would suggest death by this method would likely not be painful[]" whereas "[d]eath by lethal injection is known to be very painful as a result of multiorgan damage, including lungs filled with fluid, found at autopsy of these executed individuals."

With this new evidence which the Court finds to be reliable, and with the state not submitting anything in contradiction,[5] the Court finds that based on the current record Price has a substantial likelihood of succeeding on the merits.

### B) Substantial threat irreparable injury will occur

Considering that the consequence of not issuing the preliminary injunction is that Price will be executed, the Court concludes that irreparable injury will occur.

### C) The stay would not substantially harm the other litigant

While the State certainly has an interest in carrying out the execution as expeditiously as possible, a short sixty-day stay will not substantially harm this interest. Also, although the State argues that Price waited too late, the Court does not find that he timed his motion in an effort to manipulate the execution. Rather, Price, the State and the undersigned have been proceeding as quickly as possible on this issue since before the execution date was set. However, Price could be faulted with not presenting the evidence concerning a significant reduction in pain at an earlier date. However, this fact does not substantially harm the State.

### D) The injunction would not be adverse to the public interest

The public has an interest in expeditious punishment for heinous crimes. The public also has an interest in their State not executing citizens in violation of the constitutional right to be

---

[5] The State takes issue with the reliability of the submitted evidence, but submits no evidence in response. The undersigned certainly does not fault the State in this regard, as they

free from cruel and unusual punishment.  Pursuant to the factors set forth by the U.S. Supreme Court, Price has presented sufficient evidence, uncontested by contradictory evidence, that he is likely to prevail on his Eighth Amendment claim.

**Upon consideration, it is ORDERED that Price's motion for preliminary injunction is GRANTED as follows: Price's execution scheduled for April 11, 2019 at 6:00 p.m. CST is STAYED for SIXTY DAYS.**  The State has until May 10, 2019, to submit evidence in contradiction to Price's contention that 1) the three-drug execution protocol will cause or is likely to cause him severe pain and 2) that execution by nitrogen hypoxia will significantly reduce the substantial risk of severe pain.

**DONE** and **ORDERED** this the **11th** day of **April 2019.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

have not had sufficient time to respond, or consider, the new evidence.